REDACTED

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-02311<br>Honorable Marianne O. Battani |
| In re:  VALVE TIMING CONTROL DEVICES | 2:13-cv-02502-MOB-MKM |
| | CONSOLIDATED AMENDED  CLASS ACTION COMPLAINT |
| THIS RELATES TO: | JURY TRIAL DEMANDED |
| ALL DEALERSHIP ACTIONS | **[FILED UNDER SEAL-HIGHLY CONFIDENTIAL]** |

## DEALERSHIP CONSOLIDATED CLASS COMPLAINT

Martens Cars of Washington, Inc. ("Plaintiff Martens"), Landers Auto Group No. 1, Inc., d/b/a Landers Toyota ("Plaintiff Landers"), Hammett Motor Company, Inc. ("Plaintiff Hammett"), Superstore Automotive, Inc. ("Plaintiff Superstore"), Lee Pontiac-Oldsmobile-GMC Truck, Inc. ("Plaintiff Lee"), V.I.P. Motor Cars Ltd. ("Plaintiff V.I.P."), Desert European Motorcars, Ltd. ("Plaintiff Desert"), Dale Martens Nissan Subaru, Inc. ("Plaintiff Dale Martens"), Green Team of Clay Center Inc. ("Plaintiff Green Team"), McGrath Automotive Group, Inc. ("Plaintiff McGrath"), Table Rock Automotive, Inc., d/b/a Todd Archer Hyundai ("Plaintiff Table Rock"), Archer-Perdue, Inc., d/b/a/ Archer-Perdue Suzuki ("Plaintiff Archer-Perdue"), Bonneville and Son, Inc. ("Plaintiff Bonneville"), Holzhauer Auto and Truck Sales, Inc. ("Plaintiff Holzhauer"), Pitre, Inc., d/b/a/ Pitre Buick GMC ("Plaintiff Pitre"), Patsy Lou Chevrolet, Inc. ("Plaintiff Patsy Lou"), John Greene Chrysler Dodge Jeep, LLC ("Plaintiff John Greene"), SLT Group II, Inc., d/b/a Planet Nissan Subaru of Flagstaff ("Plaintiff Planet Nissan"), Herb Hallman Chevrolet, Inc., d/b/a/

REDACTED

Champion Chevrolet ("Plaintiff Champion"), Charles Daher's Commonwealth Motors, Inc., d/b/a Commonwealth Chevrolet, Commonwealth Kia, Commonwealth Honda ("Plaintiff Commonwealth Motors"), Commonwealth Volkswagen, Inc., d/b/a Commonwealth Volkswagen ("Plaintiff Commonwealth Volkswagen"), Commonwealth Nissan, Inc., d/b/a Commonwealth Nissan ("Plaintiff Commonwealth Nissan"), Ramey Motors, Inc. ("Plaintiff Ramey"), Thornhill Superstore, Inc.,  d/b/a Thornhill GM Superstore ("Plaintiff Thornhill"), Dave Heather Corporation, d/b/a Lakeland Toyota Honda Mazda Subaru ("Plaintiff Lakeland"), Central Salt Lake Valley GMC Enterprises, LLC, d/b/a Salt Lake Valley Buick GMC ("Plaintiff Salt Lake Valley"), Capitol Chevrolet Cadillac, Inc. ("Plaintiff Capitol Chevrolet"), Capitol Dealerships, Inc., d/b/a Capitol Toyota ("Plaintiff Capitol Toyota"), Beck Motors, Inc. ("Plaintiff Beck"), Stranger Investments d/b/a Stephen Wade Toyota ("Plaintiff Wade"), John O'Neil Johnson Toyota, LLC ("Plaintiff Johnson"), Hartley Buick GMC Truck, Inc. ("Plaintiff Hartley"), Lee Oldsmobile-Cadillac, Inc. d/b/a Lee Honda ("Plaintiff Lee Honda"), Lee Auto Malls-Topsham, Inc. d/b/a Lee Toyota of Topsham ("Plaintiff Topsham"), Landers of Hazelwood, LLC d/b/a Landers Toyota of Hazelwood ("Plaintiff Hazelwood"), Cannon Chevrolet – Oldsmobile – Cadillac – Nissan, Inc. ("Plaintiff Cannon"), Cannon Nissan of Jackson, LLC ("Plaintiff Cannon Nissan"), Hudson Charleston Acquisition, LLC d/b/a Hudson Nissan ("Plaintiff Hudson Nissan"), Shearer Automotive Enterprises III, Inc. ("Plaintiff Shearer"), Apex Motor Corporation ("Plaintiff Apex"), Hudson Gastonia Acquisition, LLC ("Plaintiff Gastonia Nissan"); HC Acquisition, LLC d/b/a Toyota of Bristol ("Plaintiff Bristol Toyota"), Hodges Imported Cars, Inc. d/b/a Hodges Subaru ("Plaintiff Hodges"); Reno Dodge Sales, Inc. d/b/a Don Weir's Reno Dodge ("Plaintiff Don Weir"); Scotland Car Yard Enterprises d/b/a San Rafael Mitsubishi ("Plaintiff San Rafael"); Empire Nissan of Santa Rosa, LLC ("Plaintiff Empire Nissan"); Panama City Automotive Group,

REDACTED

Inc. d/b/a John Lee Nissan ("Plaintiff John Lee"); and Westfield Dodge City, Inc. ("Plaintiff Westfield") (collectively "Plaintiffs"), file this Class Action Complaint on behalf of themselves and all others similarly situated (the "Classes" as defined below).

Plaintiffs bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state unjust enrichment, antitrust, unfair competition, and consumer protection laws, demand a trial by jury, and allege as follows:

## NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against Defendants Hitachi, Ltd., Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc. (collectively with the former Hitachi Automotive Systems Group of Hitachi, Ltd. as it existed prior to July 1, 2009; the former Unisia JECS Corporation; the former Hitachi Unisia Automotive, Ltd.; and the former Tokico, Ltd, "Hitachi"), DENSO International Korea Corporation ("DIKR"), DENSO Corporation and DENSO International America, Inc. (collectively , "DENSO"), Aisin Seiki Co., Ltd. and Aisin Automotive Casting, LLC (collectively, "Aisin"), Delphi Automotive LLP, Delphi Automotive Systems, LLP, and Korea Delphi Automotive Systems Corporation (collectively, Delphi"), Mitsubishi Electric Corporation and Mitsubishi Electric Automotive America, Inc. (collectively, "MELCO"), and Mikuni Corporation and Mikuni American Corporation (collectively, "Mikuni") (collectively, "Defendants") and unnamed co-conspirators, manufacturers and/or suppliers of Valve Timing Control Devices (defined below) for engaging in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Valve Timing Control Devices.

REDACTED

2.     Plaintiffs seek to represent all automobile dealers, during the period from and including January 1, 2000 through the present (the "Class Period"), purchased vehicles[1] which included one or more Valve Timing Control Device(s) as a component part, or purchased one or more Valve Timing Control Devices(s) as a replacement part, which were manufactured or sold by Defendants, any current or former subsidiary of Defendants or any co-conspirator of Defendants.

3.     "Valve Timing Control Devices" a/k/a variable valve timing devices control the opening/closing timing of the intake valve and exhaustive valve according to driving conditions and are part of the engine management system of the automotive market.  Each Valve Timing Control Device includes the variable cam timing ("VCT"), actuator and/or solenoid valve.  In addition, some Valve Timing Control Devices contain an oil flow control valve ("OCV").  The OCV distributes oil, discharged from the engine oil pump, to two oil chambers of each VCT, controlling the oil amounts of the oil chambers.  Valve Timing Control Manufacturers sell VCTs and OCVs together and separately.  The VCT controls the opening/closing timing of the valve consistent with the oil amounts of the oil chambers.  Valve Timing Control Devices may also be referred to as "variable valve timing" systems.

4.     Defendants manufacture, market, and sell Valve Timing Control Devices throughout and into the United States.  Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to fix, raise, maintain, and/or stabilize prices, rig bids and allocate market shares for Valve Timing Control Devices.

5.     The U.S. Department of Justice's ("DOJ") Antitrust Division is currently conducting a broad criminal investigation into illegal price fixing and bid rigging in the

---

[1] "Vehicles" as used here, means any new vehicles purchased by automobile dealers throughout the United States, including but not limited to sedans, trucks and sport utility vehicles.

REDACTED

automotive parts industry.  As part of its criminal investigation, the DOJ is seeking information about unlawful anticompetitive conduct in the market for a number of different but related automotive parts, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in the offices of a number of major competitors in the automotive parts industry.  The automotive parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the alleged illegal conduct.  The ongoing cartel investigation of price-fixing and bid-rigging in the automotive parts industry has yielded over $2.4 billion in criminal fines.  The European Commission Competition Authority ("EC") has also conducted dawn raids at the European offices of several automotive parts manufacturers.

6.      On September 26, 2013, the DOJ announced that Hitachi Automotive Systems, Ltd. agreed to plead guilty and pay a $195 million criminal fine for its role in a conspiracy to fix prices of automotive parts, including Valve Timing Control Devices, sold to automobile manufacturers, including, Nissan Motor Company, Ltd., Honda Motor Company, Ltd., General Motors Company, Ford Motor Company, Toyota Motor Corporation, Chrysler Group LLC, and Fuji Heavy Industries Ltd., and certain of their subsidiaries, affiliates and suppliers, in the United States and elsewhere, from at least as early as January 2000 until at least February 2010. The combination and conspiracy engaged in by Defendant Hitachi Automotive Systems, Ltd. and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

7.      Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Valve Timing Control Devices sold to

REDACTED

automobile manufacturers and others in the United States.  The combination and conspiracy

engaged in by Defendants and their co-conspirators was in unreasonable restraint of interstate

and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, state

antitrust, unfair competition and consumer protection laws and the state common law of unjust

enrichment.

8.       On June 30, 2014, the DOJ announced that a federal grand jury returned a one-

count Indictment against Takashi Toyokuni, Ken Funasaki, Kazunobu Tsunekawa and Tomiya

Itakura of Hitachi Automotive Systems Ltd. for agreeing to allocate the supply of, rig bids for,

and fix, stabilize and maintain the prices of, certain automotive parts sold to various automobile

manufacturers such as, Ford Motor Company, General Motors LLC, Nissan Motor Co. Ltd.,

Toyota Motor Corporation, and Honda Motor Company, Ltd., and others, and certain of their

subsidiaries, in the United States and elsewhere.  For purposes of the Indictment, "automotive

parts" included, among other parts, Valve Timing Control Devices.

9.       Defendant Aisin Seiki Co., Ltd. has agreed to plead guilty to a one-count

Information and to pay a $35.8 million criminal fine for its participation in a combination and

conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to

allocate customers of, rig bids for, and fix, stabilize, and maintain the prices of, Valve Timing

Control Devices sold to automobile manufacturers, including General Motors Company, Nissan

Motor Co., Ltd., Volvo Car Corporation, BMW AG, and certain of their subsidiaries, affiliates,

and suppliers, for installation in vehicles manufactured and sold in the United States and

elsewhere, from as early as September 2000 and continuing until at least February 2010.  The

combination and conspiracy engaged in by Defendant Aisin Seiki Co., Ltd. and its co-

REDACTED

conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

10.     Defendant DENSO Corporation agreed to plead guilty to a two-count criminal Information and to pay a $78 million fine for participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain electronic control units ("ECUs") and heater control panels ("HCPs") sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 until at least February 2010. The combination and conspiracy engaged in by Defendant DENSO Corporation and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

11.     In addition to the fact that Defendant DENSO Corporation pleaded guilty and agreed on its own behalf and on behalf of its subsidiaries to cooperating in the government's investigation, several of its high-ranking executives have pleaded guilty to criminal price-fixing in the automotive parts industry.

12.     On March 26, 2012, the DOJ announced that Norihiro Imai, an executive of Defendant DENSO Corporation, agreed to serve one year and one day in a U.S. prison, pay a $20,000 criminal fine, and plead guilty to a one-count criminal Information charging him with engaging in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of HCPs sold to customers in the United States and elsewhere.

13.     On April 26, 2012, the DOJ announced that Makoto Hattori, an executive of Defendant DENSO Corporation, agreed to serve fourteen months in a U.S. prison, pay a $20,000 criminal fine, and plead guilty to a one-count criminal Information charging him with engaging

REDACTED

in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of HCPs sold to a customer in the United States and elsewhere.

14.     On May 21, 2013, the DOJ announced that Yuji Suzuki, an executive of Defendant DENSO Corporation, agreed to serve sixteen months in a U.S. prison, pay a $20,000 criminal fine, and plead guilty to a two-count criminal Information for his role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of ECUs and HCPs sold in the United States and elsewhere.  Also on May 21, 2013, the DOJ announced that Hiroshi Watanabe an executive of Defendant DENSO Corporation, agreed to serve fifteen months in a U.S. prison, pay a $20,000 criminal fine, and plead guilty to a one-count criminal Information for his role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of HCPs sold in the United States and elsewhere.

15.     On February 20, 2014, the DOJ announced that Kazuaki Fujitani, a former executive of Defendant DENSO corporation, agreed to serve one year and one day in a U.S. prison and plead guilty to a one-count criminal Information charging him with obstruction of justice for deleting numerous e-mails and electronic documents upon learning the FBI was executing a search warrant on Defendant DENSO International America, Inc. in connection with the DOJ's investigation into a conspiracy to fix the prices of HCPs installed in automobiles sold in the United States and elsewhere.

16.     On June 30, 2014, the DOJ announced that Satoru Horisaki, a former executive of Defendant DENSO corporation, agreed to serve one year and one day in a U.S. prison, pay a $20,000 criminal fine, and plead guilty to a one-count criminal Information charging him with participating in a conspiracy to agree upon bids and prices for, and allocate the supply of,

REDACTED

automotive instrument panel clusters sold to Honda of America Manufacturing Co. Inc., in the United States and elsewhere.

17.     Defendant Mitsubishi Electric Corporation agreed to plead guilty and to pay a criminal fine of $190 million for participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the price of, certain automotive parts sold to automobile manufacturers, including Ford Motor Company, General Motors LLC, Chrysler Group LLC, Fuji Heavy Industries Ltd., Nissan Motor Company, Ltd., Honda Motor Company, Ltd., Toyota Motor Corporation, and certain of their subsidiaries, in the United States and elsewhere, from at least as early as January 2000 until at least February 2010.  "Automotive parts," for purposes of the plea agreement, included, among other products, VCT and variable valve timing.  The combination and conspiracy engaged in by Defendant Mitsubishi Electric Corporation and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

18.     On June 30, 2014, the DOJ announced that a federal grand jury returned a three-count Indictment against Atsushi Ueda, Minoru Kurisaki, and Hideyuki Saito, current and former executives of Mitsubishi Electric Corporation, for their participation in a conspiracy to fix the prices of certain automotive parts, including starter motors, alternators, and ignition coils.  Count one charged Atsushi Ueda, Minoru Kurisaki, and Hideyuki Saito with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices of, various automotive parts sold to Ford Motor Company., General Motors LLC, Chrysler Group LLC, Fuji Heavy Industries Ltd., Nissan Motor Company Ltd., Honda Motor Company Ltd., and certain of

REDACTED

their subsidiaries, in the United States and elsewhere.  Count two charged Minoru Kurisaki and Hideyuki Saito with knowingly conspiring to obstruct justice by destroying documents and corruptly persuading, and attempting to persuade others, to destroy documents related to an official proceeding, grand jury investigation, and U.S. agency investigation.  Count three charged Hideyuki Saito with knowingly and corruptly persuading, or attempting to persuade, other employees of Mitsubishi Electric Corporation to destroy or conceal paper documents and delete electronic data that may contain evidence of antitrust crimes in the United States and elsewhere with the intent to impair the objects' availability and integrity for use in an official proceeding.

19.     As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Classes (as defined below) paid artificially inflated prices for Valve Timing Control Devices during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

20.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).   Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and the state common law of unjust enrichment, and seek to obtain restitution, recover damages and secure other relief against Defendants for violations of those state laws.  Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

21.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and 28 U.S.C. §§ 1331 and 1337.  This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is a class action in which the

10

REDACTED

matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from Defendants; and (ii) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

22.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. §§ 1391 (b), (c), and (d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

23.     This Court has *in personam* jurisdiction over Defendants because Defendants, either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Valve Timing Control Devices throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; (d) targeted customers in the United States, including in this District; or (e) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.  Defendants also conduct business throughout the United States, including in this District, and have purposefully availed themselves of the laws of the United States.

REDACTED

24.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

25.     The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

26.     Valve Timing Control Devices manufactured abroad by Defendants and sold for use in automobiles in the United States are goods brought into the United States for sale and therefore constitute import commerce.  To the extent any Valve Timing Control Devices are purchased in the United States and such Valve Timing Control Devices do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce.  The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

27.     By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes.  Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain, and/or stabilize prices, rig bids and allocate the market and customers in the United States for Valve Timing Control Devices, which conspiracy unreasonably restrained trade and adversely affected the market for Valve Timing Control Devices.

28.     Defendants' conspiracy and wrongdoing described herein adversely affected automobile dealers in the United States.

12

REDACTED

# PARTIES

## Plaintiffs

29.     Plaintiff Hammett is a Mississippi corporation with its principal place of business in Durant, Mississippi.  Plaintiff Hammett is an authorized Ford dealer who bought Ford-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

30.     During the Class Period, Plaintiff Hammett purchased vehicles containing Valve Timing Control Devices manufactured by Defendants or their co-conspirators.  Plaintiff Hammett also purchased Valve Timing Control Devices, manufactured by Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hammett purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Mississippi.  Plaintiff Hammett has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

31.     Plaintiff Landers is an Arkansas corporation with its principal place of business in Little Rock, Arkansas.  Plaintiff Landers is an authorized Toyota dealer who bought Toyota-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

32.     During the Class Period, Plaintiff Landers purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Landers also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Landers purchased and received both the afore-mentioned vehicles and Valve Timing

REDACTED

Control Devices in Arkansas.  Plaintiff Landers has also displayed, sold, serviced, and advertised its vehicles in Arkansas during the Class Period.

33.     Plaintiff Martens is a Maryland corporation that had its principal place of business in the District of Columbia during the Class Period.  During the Class Period, Plaintiff Martens was an authorized Volvo and Volkswagen dealer who sold Volvo- and Volkswagen-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators.

34.     During the Class Period, Plaintiff Martens purchased vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators. Plaintiff Martens also purchased Valve Timing Control Devices, manufactured by one or more of the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Martens purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in the District of Columbia.  Plaintiff Martens has also displayed, sold, and advertised its vehicles in the District of Columbia during the Class Period.

35.     Plaintiff Superstore is a Minnesota company, with its principal place of business in White Bear Lake, Minnesota.  Plaintiff Superstore is an authorized Buick/GMC dealer, doing business under the name White Bear Lake Superstore.  Plaintiff Superstore bought Buick- and GMC-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

36.     During the Class Period, Plaintiff Superstore purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.

14

REDACTED

Plaintiff Superstore also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Superstore purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Minnesota.  Plaintiff Superstore has also displayed, sold, serviced, and advertised its vehicles in Minnesota during the Class Period.

37.     Plaintiff Lee is a Florida corporation, with its principal place of business in Fort Walton Beach, Florida.  Plaintiff Lee is presently an authorized GMC dealer.  During the Class Period, Plaintiff Lee was also an authorized Pontiac, Oldsmobile and Jeep dealer.  Plaintiff Lee buys GMC-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators.  During the Class Period, Plaintiff Lee bought Pontiac-, Oldsmobile-, and Jeep-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators.

38.     During the Class Period, Plaintiff Lee purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Lee also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Lee purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Florida.  Plaintiff Lee has also displayed, sold, serviced, and advertised its vehicles in Florida during the Class Period.

REDACTED

39.     Plaintiff V.I.P. is a California company with its principal place of business in Palm Springs, California.  Plaintiff VIP is an authorized Mercedes, BMW, Infiniti, and Hyundai dealer who bought Mercedes-, BMW-, Infiniti-, and Hyundai-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

40.     During the Class Period, Plaintiff V.I.P. purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff V.I.P. also purchased Valve Timing Control Devices, for its repair and service business, during the Class Period.  Plaintiff V.I.P. purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in California.  Plaintiff V.I.P. has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

41.     Plaintiff Desert is a California company, with its principal place of business in Rancho Mirage, California.  Plaintiff Desert is an authorized Rolls Royce, Bentley, Aston Martin, Maserati, Porsche, Jaguar, Land Rover, Audi, Lotus, and Spyker dealer who bought Rolls Royce-, Bentley-, Aston Martin-, Maserati-, Porsche-, Jaguar-, Land Rover-, Audi-, Lotus-, and Spyker-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

42.     During the Class Period, Plaintiff Desert purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Desert also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.

REDACTED

Plaintiff Desert purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in California.  Plaintiff Desert has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

43.     Plaintiff Dale Martens was a Kansas corporation, with its principal place of business in Lawrence, Kansas during the Class Period.  Plaintiff Dale Martens was an authorized Nissan and Subaru dealer during the Class Period, who, during the Class Period, bought Nissan- and Subaru-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators.

44.     During the Class Period, Plaintiff Dale Martens purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Dale Martens also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Dale Martens purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Kansas.  Plaintiff Dale Martens has also displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

45.     Plaintiff Green Team is a Kansas corporation, with its principal place of business in Clay Center, Kansas.  Plaintiff Green Team is an authorized Chrysler, Jeep, Dodge, and Ram dealer, who bought Chrysler-, Jeep-, Dodge-, and Ram-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

17

REDACTED

46.     During the Class Period, Plaintiff Green Team purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Green Team also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Green Team purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Kansas.  Plaintiff Green Team has also displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

47.     Plaintiff McGrath is a Delaware corporation, with its principal place of business in Cedar Rapids, Iowa.  Plaintiff McGrath is an authorized Buick, GMC, Chevrolet, Chrysler, Dodge, Jeep, Ram, Kia, and Cadillac dealer, who bought Buick-, GMC-, Chevrolet-, Chrysler-, Dodge-, Jeep-, Ram-, Kia-, and Cadillac-brand cars containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

48.     During the Class Period, Plaintiff McGrath purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff McGrath also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff McGrath purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Iowa.  Plaintiff McGrath has also displayed, sold, serviced, and advertised its vehicles in Iowa during the Class Period.

49.     Plaintiff Table Rock is a Nebraska corporation, with its principal place of business in Bellevue, Nebraska.  Plaintiff Table Rock is an authorized Hyundai dealer, who

18

REDACTED

bought Hyundai-brand cars containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

50.     During the Class Period, Plaintiff Table Rock purchased vehicles containing Valve Timing Control Devices manufactured one or more Defendants or their co-conspirators. Plaintiff Table Rock also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Table Rock purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Nebraska.  Plaintiff Table Rock has also displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

51.     Plaintiff Archer-Perdue is a Nebraska corporation, with its principal place of business in Omaha, Nebraska.  Plaintiff Archer-Perdue is an authorized Suzuki dealer, who, during the Class Period, has bought Suzuki-brand cars containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators.

52.     During the Class Period, Plaintiff Archer-Perdue purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Archer-Perdue also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Archer-Perdue purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Nebraska.  Plaintiff Archer-Perdue has also displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

REDACTED

53.     Plaintiff Bonneville is a New Hampshire corporation, with its principal place of business in Manchester, New Hampshire.  Plaintiff Bonneville is an authorized Dodge, Chrysler, Jeep, and Ram dealer, who bought Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

54.     During the Class Period, Plaintiff Bonneville purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Bonneville also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Bonneville purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in New Hampshire.  Plaintiff Bonneville has also displayed, sold, serviced, and advertised its vehicles in New Hampshire during the Class Period.

55.     Plaintiff Holzhauer is a Delaware corporation, with its principal place of business in Nashville, Illinois.  Plaintiff Holzhauer is an authorized Dodge, Chrysler, and Jeep dealer, who bought Dodge-, Chrysler-, and Jeep-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

56.     During the Class Period, Plaintiff Holzhauer purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Holzhauer also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.

REDACTED

Plaintiff Holzhauer purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Illinois.  Plaintiff Holzhauer has also displayed, sold, serviced, and advertised its vehicles in Illinois during the Class Period.

57.     Plaintiff Pitre is a New Mexico corporation, with its principal place of business in Albuquerque, New Mexico.  Plaintiff Pitre is an authorized Buick and GMC dealer, who bought Buick- and GMC-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

58.     During the Class Period, Plaintiff Pitre purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Pitre also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Pitre purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in New Mexico.  Plaintiff Pitre has also displayed, sold, serviced, and advertised its vehicles in New Mexico during the Class Period.

59.     Plaintiff Patsy Lou is a Michigan corporation, with its principal place of business in Flint, Michigan.  Plaintiff Patsy Lou is an authorized Chevrolet dealer, who bought Chevrolet-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

60.     During the Class Period, Plaintiff Patsy Lou purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Patsy Lou also purchased Valve Timing Control Devices, manufactured by one or more

REDACTED

Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Patsy Lou purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Michigan.  Plaintiff Patsy Lou has also displayed, sold, serviced, and advertised its vehicles in Michigan during the Class Period.

61.     Plaintiff John Greene is a North Carolina corporation, with its principal place of business in Morganton, North Carolina.  Plaintiff John Greene is an authorized Chrysler, Dodge, Jeep, and Ram dealer, who bought Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

62.     During the Class Period, Plaintiff John Greene purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff John Greene also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff John Greene purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in North Carolina.  Plaintiff John Greene has also displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

63.     Plaintiff Planet Nissan is an Arizona corporation, with its principal place of business in Flagstaff, Arizona.  Plaintiff Planet Nissan is an authorized Nissan and Subaru dealer, who bought Nissan- and Subaru-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

REDACTED

64.     During the Class Period, Plaintiff Planet Nissan purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Planet Nissan also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Planet Nissan purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Arizona.  Plaintiff Planet Nissan has also displayed, sold, serviced, and advertised its vehicles in Arizona during the Class Period.

65.     Plaintiff Champion is a Nevada corporation, with its principal place of business in Reno, Nevada.  Plaintiff Champion is an authorized Chevrolet dealer, who bought Chevrolet-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

66.     During the Class Period, Plaintiff Champion purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Champion also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Champion purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Nevada.  Plaintiff Champion has also displayed, sold, serviced, and advertised its vehicles in Nevada during the Class Period.

67.     Plaintiff Commonwealth Motors is a Delaware corporation, with its principal place of business in Lawrence, Massachusetts.  Plaintiff Commonwealth Motors is an authorized Chevrolet, Honda, and Kia dealer, who bought Chevrolet-, Honda-, and Kia-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or

REDACTED

their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

68.     During the Class Period, Plaintiff Commonwealth Motors purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Commonwealth Motors also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Commonwealth Motors purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Massachusetts.  Plaintiff Commonwealth Motors has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

69.     Plaintiff Commonwealth Volkswagen is a Massachusetts corporation with its principal place of business in Lawrence, Massachusetts.  Plaintiff Commonwealth Volkswagen is an authorized Volkswagen dealer, who bought Volkswagen-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

70.     During the Class Period, Plaintiff Commonwealth Volkswagen purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Commonwealth Volkswagen also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Commonwealth Volkswagen purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in

REDACTED

Massachusetts.  Plaintiff Commonwealth Volkswagen has also displayed, sold, serviced and advertised its vehicles in Massachusetts during the Class Period.

71.     Plaintiff Commonwealth Nissan is a Massachusetts corporation with its principal place of business in the Lawrence, Massachusetts.  Plaintiff Commonwealth Nissan is an authorized Nissan dealer, who bought Nissan-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

72.     During the Class Period, Plaintiff Commonwealth Nissan purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Commonwealth Nissan also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Commonwealth Nissan purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Massachusetts.  Plaintiff Commonwealth Nissan has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

73.     Plaintiff Ramey is a West Virginia company with its principal place of business in Princeton, West Virginia.  Plaintiff Ramey is an authorized Toyota, Chrysler, Dodge, Jeep, and Ram dealer, who bought Toyota-, Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

25

REDACTED

74.     During the Class Period, Plaintiff Ramey purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Ramey also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Ramey purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in West Virginia.  Plaintiff Ramey has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

75.     Plaintiff Thornhill is a West Virginia corporation, with its principal place of business in Chapmanville, West Virginia.  Plaintiff Thornhill is an authorized Chevrolet, Buick, and GMC dealer, who bought Chevrolet-, Buick-, and GMC-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

76.     During the Class Period, Plaintiff Thornhill purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Thornhill also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Thornhill purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in West Virginia.  Plaintiff Thornhill has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

77.     Plaintiff Lakeland is a Wisconsin corporation with its principal place of business in Sheboygan, Wisconsin.  Plaintiff Lakeland is an authorized Toyota, Honda, Mazda, and Subaru dealer who bought Toyota- Honda-, Mazda-, and Subaru-brand vehicles containing

REDACTED

Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

78.     During the Class Period, Plaintiff Lakeland purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Lakeland also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Lakeland purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Wisconsin. Plaintiff Lakeland has also displayed, sold, serviced, and advertised its vehicles in Wisconsin during the Class Period.

79.     Plaintiff Salt Lake Valley is a Utah company, with its principal place of business in Salt Lake City, Utah. Plaintiff Salt Lake Valley is an authorized Buick and GMC dealer, who bought Buick- and GMC-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

80.     During the Class Period, Plaintiff Salt Lake Valley purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Salt Lake Valley also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Salt Lake Valley purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Utah. Plaintiff Salt Lake Valley has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

REDACTED

81.    Plaintiff Capitol Chevrolet is an Oregon corporation, with its principal place of business in Salem, Oregon.  Plaintiff Capitol Chevrolet is an authorized Chevrolet, Cadillac, and Subaru dealer, who bought Chevrolet-, Cadillac-, and Subaru-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

82.    During the Class Period, Plaintiff Capitol Chevrolet purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Capitol Chevrolet also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Capitol Chevrolet purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Oregon.  Plaintiff Capitol Chevrolet has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

83.    Plaintiff Capitol Toyota is an Oregon corporation with its principal place of business in Salem, Oregon.  Plaintiff Capitol Toyota is an authorized Toyota dealer, who bought Toyota-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

84.    During the Class Period, Plaintiff Capitol Toyota purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Capitol Toyota also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service

REDACTED

business, during the Class Period.  Plaintiff Capitol Toyota purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Oregon.  Plaintiff Capitol Toyota has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

85.     Plaintiff Beck is a South Dakota corporation, with its principal place of business in Pierre, South Dakota.  Plaintiff Beck is an authorized Chevrolet and Cadillac dealer, who bought Chevrolet- and Cadillac-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

86.     During the Class Period, Plaintiff Beck purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Beck also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Beck purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in South Dakota.  Plaintiff Beck has also displayed, sold, serviced, and advertised its vehicles in South Dakota during the Class Period.

87.     Plaintiff Wade is a Utah corporation, with its principal place of business in St. George, Utah.  Plaintiff Wade is an authorized Toyota dealer, who bought Toyota-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

REDACTED

88.     During the Class Period, Plaintiff Wade purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Wade also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Wade purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Utah.  Plaintiff Wade has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

89.     Plaintiff Johnson is a Mississippi limited liability company, with its principal place of business in Meridian, Mississippi.  Plaintiff Johnson is an authorized Toyota dealer, who bought Toyota-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

90.     During the Class Period, Plaintiff Johnson purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Johnson also purchased Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Johnson purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Mississippi.  Plaintiff Johnson has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

91.     Plaintiff Hartley is a New York corporation, with its principal place of business in Jamestown, New York.  During the Class Period, Plaintiff Hartley has been an authorized Honda, Buick, Pontiac, and GM dealer, who bought Honda-, Buick-, Pontiac-, and GM-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-

30

REDACTED

conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators.

92.     During the Class Period, Plaintiff Hartley purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Hartley also purchased Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Hartley purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in New York.  Plaintiff Hartley has also displayed, sold, serviced, and advertised its vehicles in New York during the Class Period.

93.     Plaintiff Lee Honda is a Maine corporation, with its principal place of business in Auburn, Maine.  Plaintiff Lee Honda is an authorized Honda dealer, who bought Honda-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

94.     During the Class Period, Plaintiff Lee Honda purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Lee Honda also purchased Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Lee Honda purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Maine.  Plaintiff Lee Honda has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

95.     Plaintiff Topsham is a Maine corporation, with its principal place of business in Topsham, Maine.  Plaintiff Topsham is an authorized Toyota dealer, who bought Toyota-brand

31

REDACTED

cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

96.     During the Class Period, Plaintiff Topsham purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Topsham also purchased Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Topsham purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Maine.  Plaintiff Topsham has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

97.     Plaintiff Hazelwood is an Arkansas corporation, with its principal place of business in Hazelwood, Missouri.  Plaintiff Hazelwood is an authorized Toyota dealer, who bought Toyota-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

98.     During the Class Period, Plaintiff Hazelwood purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Hazelwood also purchased Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hazelwood purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Missouri.  Plaintiff Hazelwood has also displayed, sold, serviced, and advertised its vehicles in Missouri during the Class Period.

REDACTED

99.     Plaintiff Cannon is a Mississippi corporation, with its principal place of business in Greenwood, Mississippi.  Plaintiff Cannon is an authorized Chevrolet and Cadillac dealer, who bought Chevrolet- and Cadillac-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

100.     During the Class Period, Plaintiff Cannon purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Cannon also purchased Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Cannon purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Mississippi.  Plaintiff Cannon has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

101.     Plaintiff Cannon Nissan is a Mississippi limited liability company with its principal place of business in Jackson, Mississippi.  Plaintiff Cannon is an authorized Nissan dealer, who bought Nissan-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

102.     During the Class Period, Plaintiff Cannon Nissan purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Cannon Nissan also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Cannon purchased and received both the afore-

33

REDACTED

mentioned vehicles and Valve Timing Control Devices in Mississippi.  Plaintiff Cannon has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

103.    Plaintiff Hudson Nissan is a South Carolina limited liability company with its principal place of business in North Charleston, South Carolina.  Plaintiff Hudson Nissan is an authorized Nissan dealer, who bought Nissan-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

104.    During the Class Period, Plaintiff Hudson Nissan purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Hudson Nissan also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hudson Nissan purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in South Carolina.  Plaintiff Hudson Nissan has also displayed, sold, serviced, and advertised its vehicles in South Carolina during the Class Period.

105.    Plaintiff Shearer is a Vermont corporation with its principal place of business in Rutland, Vermont.  Plaintiff Shearer is an authorized Honda dealer, who bought Honda-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

106.    During the Class Period, Plaintiff Shearer purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.

REDACTED

Plaintiff Shearer also purchased Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Shearer purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Vermont.  Plaintiff Shearer has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

107.    Plaintiff Apex is a Vermont corporation with its principal place of business in South Burlington, Vermont.  Plaintiff Apex is an authorized Acura dealer, who bought Acura-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

108.    During the Class Period, Plaintiff Apex purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators. Plaintiff Apex also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Apex purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Vermont.  Plaintiff Apex has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

109.    Plaintiff Gastonia Nissan is a North Carolina limited liability company with its principal place of business in Gastonia, North Carolina.  Plaintiff Gastonia Nissan is an authorized Nissan dealer that purchased Nissan-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

REDACTED

110.    During the Class Period Plaintiff Gastonia Nissan purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Gastonia Nissan also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Gastonia Nissan purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in North Carolina.  Plaintiff Gastonia Nissan has also displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

111.    Plaintiff Bristol Toyota is a Tennessee limited liability company with its principal place of business in Bristol, Tennessee.  Plaintiff Bristol Toyota is an authorized Toyota dealer that purchased Toyota-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

112.    During the Class Period Plaintiff Bristol Toyota purchased vehicles containing Valve Timing Control Devices manufactured by one or more Defendants or their co-conspirators.  Plaintiff Bristol Toyota also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Bristol Toyota purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Tennessee.  Plaintiff Bristol Toyota has also displayed, sold, serviced, and advertised its vehicles in Tennessee during the Class Period.

113.    Plaintiff Hodges is a Michigan corporation with its principal place of business in Ferndale, Michigan. Plaintiff Hodges is an authorized Subaru dealer that purchased Subaru-

REDACTED

brand cars containing Valve Timing Control Devices manufactured by the Defendants or their
co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or
their co-conspirators during the Class Period.

114.     During the Class Period Plaintiff Hodges purchased vehicles containing Valve
Timing Control Devices manufactured by one or more Defendants or their co-conspirators.
Plaintiff Hodges also purchased Valve Timing Control Devices, manufactured by one or more
Defendants or their co-conspirators, for its repair and service business, during the Class Period.
Plaintiff Hodges purchased and received both the afore-mentioned vehicles and Valve Timing
Control Devices in Michigan.  Plaintiff Hodges has also displayed, sold, serviced, and advertised
its vehicles in Michigan during the Class Period.

115.     Plaintiff Don Weir is a Nevada corporation with its principal place of business
in Reno, Nevada.  Plaintiff Weir is an authorized Chrysler, Dodge and Jeep dealer that purchased
Chrysler-, Dodge- and Jeep-brand cars containing Valve Timing Control Devices manufactured
by the Defendants or their co-conspirators, as well as Valve Timing Control Devices
manufactured by the Defendants or their co-conspirators during the Class Period.

116.     During the Class Period Plaintiff Weir purchased vehicles containing Valve
Timing Control Devices manufactured by one or more Defendants or their co-conspirators.
Plaintiff Weir also purchased Valve Timing Control Devices, manufactured by one or more
Defendants or their co-conspirators. Weir purchased and received both the afore-mentioned
vehicles and Valve Timing Control Devices in Nevada.  Plaintiff Weir has also displayed, sold,
serviced, and advertised its vehicles in Nevada during the Class Period.

117.     Plaintiff San Rafael is a California corporation with its principal place of
business in San Rafael, California.  Plaintiff San Rafael is an authorized Mitsubishi dealer that

REDACTED

purchased Mitsubishi-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

118.     During the Class Period Plaintiff San Rafael purchased vehicles containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators. Plaintiff San Rafael also purchased Valve Timing Control Devices, manufactured by the Defendants or their co-conspirators. Plaintiff San Rafael purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in California.  Plaintiff San Rafael has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

119.     Plaintiff Empire Nissan is a California limited liability company with its principal place of business in Santa Rosa, California.  Plaintiff Empire Nissan is an authorized Nissan dealer that purchased Nissan-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

120.     During the Class Period Plaintiff Empire Nissan purchased vehicles containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators. Plaintiff Empire Nissan also purchased Valve Timing Control Devices, manufactured by the Defendants or their co-conspirators. Plaintiff Empire Nissan purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in California.  Plaintiff Empire Nissan has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

121.     Plaintiff John Lee is a Florida corporation with its principal place of business in Panama City, Florida.  Plaintiff John Lee is an authorized Nissan dealer that purchased

REDACTED

Nissan-brand cars containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by the Defendants or their co-conspirators during the Class Period.

122.     During the Class Period Plaintiff John Lee purchased vehicles containing Valve Timing Control Devices manufactured by the Defendants or their co-conspirators. Plaintiff John Lee also purchased Valve Timing Control Devices, manufactured by the Defendants or their co-conspirators. Plaintiff John Lee purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in Florida.  Plaintiff John Lee has also displayed, sold, serviced, and advertised its vehicles in Florida during the Class Period.

123.     Plaintiff Westfield is a New York company with its principal place of business in Westfield, New York.  Plaintiff Westfield is an authorized Chrysler dealer, who sells Chrysler-, Dodge- and Jeep-brand vehicles containing Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators, as well as Valve Timing Control Devices manufactured by one or more of the Defendants or their co-conspirators.

124.     During the Class Period Plaintiff Westfield purchased vehicles containing Valve Timing Control Devices manufactured one or more Defendants or their co-conspirators. Plaintiff Westfield also purchased Valve Timing Control Devices, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Westfield purchased and received both the afore-mentioned vehicles and Valve Timing Control Devices in New York.  Plaintiff Westfield has also displayed, sold, serviced and advertised its vehicles in New York during the Class Period.

REDACTED

**Defendants**

125.    Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Hitachi, Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members.  Unisia JECS Corporation, a former Japanese corporation, manufactured, marketed and/or sold Valve Timing Control Devices – directly and/or through its subsidiaries, which it wholly owned and/or controlled – that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members.  On October 1, 2002, Unisia JECS Corporation became a wholly owned subsidiary of Hitachi, Ltd. and was renamed Hitachi Unisia Automotive, Ltd.  On May 26, 2004, Hitachi Unisia Automotive, Ltd. was merged into Hitachi, Ltd and dissolved.  Upon information and belief, Hitachi, Ltd. retained the liabilities of Hitachi Unisia Automotive, Ltd., and Unisia JECS Corporation.

126.    Defendant Hitachi Automotive Systems, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Hitachi Automotive Systems, Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and Class Members.

127.    Defendant Hitachi Automotive Systems Americas, Inc. is a Delaware corporation with its principal place of business in Harrodsburg, Kentucky.  It is a subsidiary of and wholly

REDACTED

owned and/or controlled by its parent, Hitachi Automotive Systems, Ltd.  Hitachi Automotive Systems Americas, Inc. manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period. At all times during the Class Period its activities were under the control and direction of Hitachi Automotive Systems, Ltd., which controlled its policies, sales and finances.

128.    Defendant DENSO Corporation is a Japanese corporation with its principal place of business in Kariya, Aichi Prefecture, Japan.  DENSO Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members.

129.    Defendant DENSO International America, Inc. is a Delaware corporation with its principal place of business in Southfield, Michigan.  It is a subsidiary of and wholly owned and/or controlled by its parent, DENSO Corporation.  DENSO International America, Inc. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members.  At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

130.    Defendant DENSO International Korea Corporation is a Korean corporation with its principal place of business in Uiwang-si, South Korea. It is a subsidiary of and wholly owned and/or controlled by its parent, DENSO Corporation. Defendant DENSO International Korea

REDACTED

Corporation manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

131.    Defendant Aisin Seiki Co., Ltd. is a Japanese corporation with its principal place of business in Kariya, Japan.  Defendant Aisin Seiki Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members.

132.    Defendant Aisin Automotive Casting, LLC is a Kentucky limited liability company with its principal place of business in London, Kentucky.  It is a subsidiary of and wholly owned and/or controlled by its parent, Aisin Seiki Co., Ltd.  Aisin Automotive Casting, LLC – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

133.    Defendant Delphi Automotive LLP is a public limited company incorporated under the laws of England and Wales with its principal place of business in Troy, Michigan. Defendant Delphi Automotive LLP – directly and/or through its subsidiaries, which it wholly

REDACTED

owned and/or controlled – manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members.

134.     Defendant Delphi Automotive Systems, LLC is a Delaware corporation with its principal place of business in Troy, Michigan.  It is a subsidiary of and wholly owned and/or controlled by its parent, Delphi Automotive LLP.  Delphi Automotive Systems, LLC – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its English and Welsh parent, which controlled its policies, sales, and finances.

135.     Defendant Korea Delphi Automotive Systems Corp. is a Korean corporation with its principal place of business in Daegu, South Korea.  It is a subsidiary of and wholly owned and/or controlled by its parent, Delphi Automotive LLP.  Korea Delphi Automotive Systems Corp. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Valve Timing Control Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its English and Welsh parent, which controlled its policies, sales, and finances.

REDACTED

136.     Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.  Mitsubishi Electric Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members.

137.     Defendant Mitsubishi Electric Automotive America, Inc. is a Delaware corporation with its principal place of business in Mason, Ohio.  It is a subsidiary of and wholly owned and/or controlled by its parent, Mitsubishi Electric Corporation.  Mitsubishi Electric Automotive America, Inc. manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

138.     Defendant Mikuni Corp. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Mikuni Corp. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members.

139.     Defendant Mikuni American Corp. is a California corporation with its principal place of business in Northridge, California.  It is a subsidiary of and wholly owned and/or controlled by its parent, Mikuni Corp.  Mikuni American Corp. – directly and/or through its

REDACTED

subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Valve Timing Control Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Valve Timing Control Devices to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

## AGENTS AND CO-CONSPIRATORS

140.    Each Defendant acted as the principal of or agent for each other Defendant with respect to the acts, violations, and common course of conduct alleged herein.

141.    Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as defendants in this lawsuit and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

142.    Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.    The Valve Timing Control Devices Industry

143.    Valve Timing Control Devices control the timing of engine valves' operation, and include the VTC actuator and/or solenoid valve.  Valve Timing Control Devices are part of the engine management system known as "variable valve timing" in modern fuel-injected internal

45

REDACTED

combustion engines.   Automotive valves are cylindrical parts where fuel and air typically mix in an internal combustion engine.  One end of the valve opens to let in a mixture of air and fuel. When the valve closes, a spark plug ignites the mixture to generate force to drive the pistons that run the engine.  The Valve Timing Control Device regulates the timing of the opening and closing of the valves.

144.    A Valve Timing Control Device can be controlled by a solenoid that controls the rotation of the camshaft in an engine.

145.    Several pictures and diagrams of Valve Timing Control Devices are set forth below.

**Valve Timing Control Devices**



Single Cam Timing Control Device

REDACTED



VTEC Control Device

**Hitachi's Valve Timing Control Device**



**Valve Timing Control System Diagram(s)**

REDACTED





146.    Valve Timing Control Devices are installed by original equipment manufacturers

("OEMs") in new cars as part of the automotive manufacturing process.  They are also installed

by OEMs in cars to replace worn out, defective or damaged Valve Timing Control Devices.

147.    For new cars, the OEMs – mostly large automotive manufacturers such as Ford

Motor Company, Toyota Motor Corporation, GM, etc. – purchase Valve Timing Control Devices

directly from Defendants.  Valve Timing Control Devices may also be purchased by component

manufacturers who then supply such systems to OEMs.  These component manufacturers are

also called "Tier 1 Manufacturers" in the industry.  Tier 1 Manufacturers supply Valve Timing

Control Devices directly to an OEM.

REDACTED

148.    Replacement Valve Timing Control Devices sold by OEMs to dealerships are the same as the Valve Timing Control Devices installed in vehicles and are made by the same manufacturer who made the Valve Timing Control Devices originally installed—that is the purpose of an OEM part, made by the OEM supplier. Such replacement parts are not the same as aftermarket parts, which are made by different manufacturers than those who manufactured the original parts. The prices of replacement Valve Timing Control Devices were inflated by Defendants' collusion.

149.    When purchasing Valve Timing Control Devices, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model specific parts.  Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years.  Typically, the bidding process for a particular model begins approximately three years prior to the start of production of a new model.  OEMs procure parts for U.S.-manufactured vehicles in the United States and elsewhere.

150.    Defendants and their co-conspirators supplied Valve Timing Control Devices to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere.  The Defendants and their co-conspirators manufactured Valve Timing Control Devices (a) in the United States and elsewhere for installation in vehicles manufactured and sold in the United States, (b) in Japan and elsewhere for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan and elsewhere for installation in vehicles manufactured in Japan and elsewhere for export to and sale in the United States.

151.    Plaintiffs and members of the proposed Classes purchased Valve Timing Control Devices indirectly from the Defendants or their co-conspirators.  By way of example, an

REDACTED

automobile dealer indirectly purchases one or more Valve Timing Control Devices from the

Defendants or their co-conspirators as part of purchasing a new vehicle.   An automobile dealer

also indirectly purchases for replacement one or more Valve Timing Control Devices from the

Defendants or their co-conspirators when repairing a damaged vehicle or where one or more of

the vehicle's Valve Timing Control Devices are defective.

      **B.**      **<u>The Structure and Characteristics of the Valve Timing Control Devices</u>**
              **<u>Market Render the Conspiracy More Plausible</u>**

      152.      The structure and other characteristics of the Valve Timing Control Devices

market in the United States are conducive to a price-fixing agreement and have made collusion

particularly attractive in this market.   Specifically, the Valve Timing Control Devices market has

(1) high barriers to entry and (2) inelasticity of demand.

      **1.**      **The Valve Timing Control Devices Market Has High Barriers to**
              **Entry**

      153.      A collusive arrangement that raises product prices above competitive levels

would, under basic economic principles, attract new entrants seeking to benefit from the supra-

competitive pricing.   Where, however, there are significant barriers to entry, new entrants are

less likely.   Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

      154.      There are substantial barriers that preclude, reduce, or make more difficult entry

into the Valve Timing Control Devices market.   A new entrant into the business would face

costly and lengthy start-up costs, including multi-million dollar costs associated with

manufacturing plants and equipment, energy, transportation, distribution infrastructure, and long-

standing customer relationships.

      155.      Defendants, for instance, own multiple patents related to the manufacture of

Valve Timing Control Devices.   These patents place a significant and costly burden on potential

REDACTED

new entrants, who must avoid infringing on the patents when entering the market with a new product.

156.    Within the Valve Timing Control Device industry, there is a significant amount of technology and engineering expertise required to build systems that fully comply with environmental and public health requirements and other regulatory standards including fuel economy requirements.

157.    In addition, an OEM cannot freely change its supplier of Valve Timing Control Devices because the OEMs design the features of their vehicles so that the Valve Timing Control Devices they purchase for a vehicle are then integrated with the other components of the ignition system of the particular vehicle model.  Thus, it would be difficult for a new competitor to enter the market after a vehicle has been specifically designed to be integrated with a particular Valve Timing Control Devices.

### 2.    There is Inelasticity of Demand for Valve Timing Control Devices

158.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality and so continue to purchase despite a price increase.

159.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues, and profits as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

REDACTED

160.    Demand for Valve Timing Control Devices is highly inelastic because there are no close substitutes for these products.  Additionally, customers must purchase Valve Timing Control Devices as an essential part of a vehicle, regardless of whether prices are kept at supra-competitive levels.   Customers wanting to purchase a car simply have no choice but to purchase Valve Timing Control Devices

### C.    Government Investigations

161.    A globally coordinated antitrust investigation is taking place in the United States, Europe, and Japan aimed at suppliers of automotive parts.  A Japan Fair Trade Commission ("JFTC") official told a leading legal publication that automotive parts supplier investigations by the JFTC, DOJ, and EC would continue to widen because the automotive industry as a whole comprises many sub-industries.  He characterized the investigations being conducted by the U.S., European, and Japanese antitrust authorities as "large and broad," and he declined to deny that this "would be history's largest case."

162.    The DOJ Antitrust Division's broad criminal investigation into illegal price-fixing and bid-rigging in the automotive parts industry is the largest criminal investigation the Antitrust Division has ever pursued.  The ongoing cartel investigation of price-fixing and bid-rigging in the automobile parts industry has yielded $3.4 billion in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.

163.    In February 2010, Japan's Fair Trade Commission raided the Tokyo offices of DENSO Corporation as part of an expansive investigation into collusion in the automotive parts industry dating back to at least 2000.

164.    The JFTC raided offices of Defendants as part of the spreading of the investigation into suspected price fixing on automotive parts.  According to its 2011 Annual Report, DENSO Corporation was investigated on July 20, 2011 at various locations, including in

REDACTED

Kariya, Aichi and some other sales branches in Japan.  And according to its 2011 Annual Report, Mitsubishi Electric Corporation has been subject to investigations conducted by the JFTC since July 2011.

165.    On September 26, 2013, the DOJ announced that Hitachi Automotive Systems, Ltd. agreed to plead guilty and pay a $195 million criminal fine and to plead guilty to a one-count criminal information charging it with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices of automotive parts, including Valve Timing Control Devices, sold to automobile manufactures in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

166.    According to the Information filed, Defendant Hitachi Automotive Systems, Ltd. and its co-conspirators carried out the Valve Timing Control Devices conspiracy by:

(a)      participating in meetings, conversations, and communications in the United States and elsewhere to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(b)      agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(c)      agreeing, during those meetings, conversations, and communications, to allocate the supply automotive parts, including Valve Timing Control Devices, sold to automobile manufactures in the United States and elsewhere;

REDACTED

      (d)      agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

      (e)      submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

      (f)      selling automotive parts, including Valve Timing Control Devices, to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

      (g)      accepting payment for automotive parts, including Valve Timing Control Devices, sold to automobile manufacturers in the United State and elsewhere at collusive and noncompetitive prices;

      (h)      engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

      (i)      employing measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations.

167.      On September 26, 2013, the DOJ announced that Defendant Mitsubishi Electric Corporation agreed to pay a $190 million criminal fine and plead guilty to a one-count Information charging it with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain automotive parts sold to automobile manufacturers, including Ford Motor Company, General Motors LLC, Chrysler Group LLC, Fuji Heavy Industries Ltd., Nissan Motor Company, Ltd, Honda Motor Company, Ltd., and certain of their

REDACTED

subsidiaries in the United States and elsewhere, from at least as early as January 2000 through at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. For purposes of Mitsubishi Electric Corporation's plea agreement, "automotive parts" are defined to include VCT and variable valve timing.

168.     According to the Information filed, Defendant Mitsubishi Electric Corporation and its co-conspirators carried out the automotive parts combination and conspiracy by, among other things, the following:

(a)     participating in meetings, conversations, and communications in the United States and elsewhere to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(b)     agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(c)     agreeing, during those meetings, conversations, and communications, to allocate the supply of certain automotive parts sold to automobile manufacturers in the United States and elsewhere;

(d)     agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

(e)     submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

REDACTED

(f)      selling certain automotive parts to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)      accepting payment for certain automotive parts sold to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(h)      engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme;

(i)      employing measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations.

169.      On November 13, 2014, the DOJ announced that Aisin Seiki Co., Ltd. agreed to plead guilty to a one-count criminal Information and pay a $35.8 million criminal fine for participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate customers of, rig bids for, and fix, stabilize, and maintain the prices of, Valve Timing Control Devices sold to various automobile manufacturers, including General Motors Company, Nissan Motor Co., Ltd., Volvo Car Corporation and BMW AG, and certain of their subsidiaries, affiliates, and suppliers, in the United States and elsewhere, from at least as early as September 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

170.      According to the Information filed, Defendant Aisin Seiki Co., Ltd. and its co-conspirators carried out the Valve Timing Control Devices conspiracy by:

REDACTED

(a)     participating in meetings, conversations, and communications to discuss the bids and price quotations for Valve Timing Control Devices to be submitted to automobile manufacturers in the United States and elsewhere;

(b)     agreeing, during those meetings, conversations, and communications, to allocate the automobile manufacturers to whom each would sell Valve Timing Control Devices in the United States and elsewhere;

(c)     agreeing, during those meetings, conversations, and communications, on bids and price quotations for Valve Timing Control Devices to be submitted to automobile manufactures in the United States and elsewhere;

(d)     exchanging information on bids and price quotations for Valve Timing Control Devices to be submitted to automobile manufacturers in the United States and elsewhere to effectuate the agreements;

(e)     submitting bids and price quotations for Valve Timing Control Devices to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

(f)     selling Valve Timing Control Devices to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)     accepting payment for Valve Timing Control Devices sold to automobile manufacturers in the United State and elsewhere at collusive and noncompetitive prices; and

(h)     engaging in meetings, conversations, and communications for the purpose of monitoring and enforcing adherence to the conspiracy.

REDACTED

### D.    Likely Existence of a Cooperating Defendant

171.    The Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA")

provides leniency benefits for a participant in a price-fixing conspiracy that voluntarily discloses

its conduct to the Department of Justice.  In most recent cases in which guilty pleas for price-

fixing conduct have been obtained, there has been a cooperating party that has been accepted into

the DOJ's ACPERA program as an "amnesty applicant."  One of the leniency benefits for a

conspirator that is accepted into the ACPERA program is that it is not charged with a criminal

offense and is not required to plead guilty to criminal charges.

172.    In light of the guilty plea in this case, in related automotive parts antitrust cases

and the DOJ's ongoing investigation into the industry, it is reasonable for this Court to infer that

there is an ACPERA "amnesty applicant" in this case.

### E.    Guilty Pleas in Related Markets in the Automotive Industry

173.    On January 30, 2012, the DOJ announced that Yazaki Corporation ("Yazaki") had

agreed to pay a $470 million fine and plead guilty to a three-count criminal information charging

Yazaki with: (1) participating in a combination and conspiracy with its co-conspirators to

suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for,

and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products

sold to automobile manufacturers in the United States and elsewhere from at least as early as

January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15

U.S.C. § 1; (2) participating in a combination and conspiracy to suppress and eliminate

competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and

maintain the prices of, instrument panel clusters sold to automobile manufacturers in the United

States and elsewhere, from at least as early as December 2002 until at least February 2010, in

violation of the Sherman Act, 15 U.S.C. § 1; and (3) participating in a combination and

REDACTED

conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of fuel senders sold to automobile manufacturers in the United States and elsewhere from at least as early as March 2004 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

174.    In addition to Yazaki, five executives from Yazaki (all Japanese nationals) – Tsuneaki Hanamura, Ryoji Kawai, Shigeru Ogawa, Kazuhiko Kashimoto and Hisamitsu Takada – pleaded guilty to their participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive wire harnesses sold to certain automobile manufacturers in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1.  These five Yazaki executives will each pay a $20,000 criminal fine and serve prison time ranging from 15 months to two years.  The two-year sentences would be the longest term of imprisonment imposed on a foreign national voluntarily submitting to U.S. jurisdiction for a Sherman Act antitrust violation.

175.    On September 29, 2011, the DOJ announced that Furukawa Electric Co. Ltd. ("Furukawa") had agreed to plead guilty and to pay a $200 million fine for its role in a criminal price-fixing and bid-rigging conspiracy involving the sale of automotive wire harnesses to automobile manufacturers.

176.    Three of Furukawa's executives also pleaded guilty to the same conspiracy.  The court sentenced two of the executives to 15 and 18 month prison sentences, to be served in the United States.

177.    On January 30, 2012, DENSO agreed to plead guilty to a two-count felony charge against DENSO for engaging in conspiracies to rig bids for and to fix, stabilize and maintain the

REDACTED

prices of electronic control units (ECUs) and heater control panels (HCPs) sold to automobile manufacturers in the United States and elsewhere.

178.    On March 26, 2012 a DENSO executive agreed to plead guilty in a criminal price-fixing and bid-rigging conspiracy involving the sale of heater control panels to automobile manufacturer.

179.    On April 26, 2012, another DENSO executive agreed to plead guilty to the same conspiracy.

180.    A number of additional companies have pleaded guilty to fixing the prices of other automotive parts, including:  automotive wire harnesses;  instrument panel clusters; fuel senders; heater control panels; occupant safety restraint systems; automotive bearings; windshield wipers; starters; radiators; alternators; ignition coils; anti-vibration rubber parts, air conditioning systems; automatic transmission fluid warmers; fan motors; switches; steering angle sensors; HID ballasts; and automotive lamps.  These companies include:  Fujikura Ltd.; GS Electech, Inc.; TRW Deutschland Holding GmbH; Autoliv, Inc.; Nippon Seiki Co., Ltd.; JTEKT Corporation; Mitsuba Corporation; Mitsubishi Electric Corporation; Mitsubishi Heavy Industries, Ltd.; NSK Ltd.; Panasonic Corporation; T. RAD Co., Ltd.; Tokai Rika Co.; Valeo Japan Co., Ltd.; Bridgestone Corp.; and Yamashita Rubber Co., Ltd.  The majority of these violators pleaded guilty to engaging in bid-rigging, price-fixing, and market allocation during the same time period as the Defendants with multiple OEMs as their targets, including Suzuki, Mazda, Mitsubishi, Subaru, Chrysler, German manufacturers and unnamed automobile manufacturers.

181.    The U.S. government has said its automotive parts cartel criminal investigation will continue and other suppliers could be charged.

REDACTED

182.     "This criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring for at least a decade. The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold," said FBI's Special Agent in Charge Andrew G. Arena.

183.     "When companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," Arena also said.  "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

184.     On February 15, 2013, Scott Hammond, the Deputy Assistant Attorney General in the Antitrust Division, discussed DOJ's ongoing automotive parts investigation in a Thomson Reuters article.  He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered*.  I say biggest with respect to the impact on U.S. businesses and consumers, and the number of companies and executives that are subject to the investigation*."  (emphasis added).

185.     On July 10, 2013, the European Commission fined four wire harness suppliers, Yazaki, S-Y Systems, Furukawa Electric and Leoni, a total of $182 million for taking part in cartels that affected Toyota, Nissan, Honda and Renault.

186.     On September 11, 2013, two Fujikura, Ltd. executives were indicted for conspiring to fix the price of wire harness assemblies to Fuji Heavy Industries, the maker of Subaru automobiles.

REDACTED

187.    On September 25, 2013, nine additional Japanese automotive suppliers and two more executives agrees to plead guilty to conspiracy charges and pay more than $740 million in fines for their roles in rigging the prices of 30 products.

188.    On September 26, 2013, Panasonic Corporation agreed to pay a $45.8 million fine and plead guilty to price-fixing allegations involving turn, wiper and other switches and steering angle sensors sold to Toyota and high intensity discharge ballasts sold to Honda, Mazda and Nissan among others.

189.    The diagram below, which was prepared by the DOJ, illustrates the recent guilty pleas and the corresponding automotive parts to which the various manufacturers have admitted to price-fixing.



190.    On October 9, 2013, Takata Corporation announced that it had agreed to pay $71.3 million to settle antitrust charges brought by the United States federal prosecutors for its role in a conspiracy to price-fix seatbelts.

REDACTED

191.    On November 26, 2013, the DOJ announced that Toyo Tire & Rubber Co. Ltd. had agreed to plead guilty and to pay a $120 million criminal fine for its role in two separate conspiracies. Toyo Tire & Rubber Co. Ltd. engaged in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the prices of, automotive anti-vibration rubber products sold to Toyota Motor Corporation, Nissan Motor Corporation, Fuji Heavy Industries, Ltd., and certain of their subsidiaries, affiliates and suppliers in the United States and elsewhere, and by agreeing to allocate sales of, and to fix, raise, and maintain the prices of, automotive constant-velocity-joint boot products sold to GKN plc and its subsidiaries in the United States and elsewhere.

192.    On November 27, 2013, the DOJ announced that Stanley Electric Co. Ltd. had agreed to plead guilty and to pay a $1.44 million criminal fine for its participation in a conspiracy to fix prices of automotive high-intensity discharge (HID) lamp ballasts installed in automobiles sold in the United States and elsewhere.

193.    On January 16, 2014, the DOJ announced that Koito Manufacturing Co. Ltd. had agreed to plead guilty and to pay a $56.6 million criminal fine for its roles in separate price-fixing conspiracies involving automobile lighting fixtures and automotive HID lamp ballasts installed in automobiles sold in the United States and elsewhere.

194.    On February 3, 2014, the DOJ announced that Aisan Industry Co. Ltd. had agreed to plead guilty and to pay a $6.86 million criminal fine for its role in a price-fixing conspiracy involving electronic throttle bodies sold to an automobile manufacturer in the United States and elsewhere.

195.    On February 13, 2014, the DOJ announced that Bridgestone Corp. had agreed to plead guilty and to pay a $425 million criminal fine for its role in a conspiracy to fix prices of

REDACTED

automotive anti-vibration rubber parts installed in vehicles sold in the United States and elsewhere.

196.     On April 23, 2014, the DOJ announced that Showa Corp. agreed to plead guilty and to pay a $19.9 million criminal fine for its role in a conspiracy to fix prices and rig bids for pinion-assist type electric powered steering assemblies installed in vehicles sold in the United States and elsewhere.

197.     On August 19, 2014, the DOJ announced that NGK Spark Plug Co., Ltd. agreed to plead guilty and to pay a $52.1 million criminal fine for its role in a conspiracy to fix prices and rig bids for spark plugs, standard oxygen sensors, and air fuel ratio sensors installed in vehicles sold to vehicle manufacturers in the United States and elsewhere.

198.     On September 29, 2014, the DOJ announced that Toyoda Gosei Co. Ltd. agreed to plead guilty and to pay a $26 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain automotive hoses sold to Toyota in the United States and by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of, automotive airbags and steering wheels sold to Subaru and Toyota in the United States and elsewhere.

199.     On October 31, 2014, the DOJ announced that Hitachi Metals Ltd. agreed to plead guilty and to pay a $1.25 million criminal fine for its role in a conspiracy to allocate the sale of, and to rig bids for, and to fix, raise, and maintain the prices of, automotive brake hose sold to Toyota in the United States and elsewhere.

REDACTED

200.    On November 13, 2014, the DOJ announced that Defendant Aisin Seiki Co. Ltd. agreed to plead guilty and to pay a $35.8 million criminal fine for its involvement in the conspiracy alleged herein.

201.    On November 24, 2014, the DOJ announced that Continental Automotive Electronics LLC and Continental Automotive Korea Ltd. agreed to plead guilty and to pay a $4 million criminal fine for their roles in a conspiracy to rig bids of instrument panel clusters installed in vehicles manufactured and sold in the United States.

202.    To date, 32 companies and 48 executives have been charged in the Antitrust Division's ongoing investigation into price fixing and bid rigging in the auto parts industry. Each of the companies have either pleaded guilty or have agreed to plead guilty and have agreed to pay more than $2.4 billion in criminal fines.  At lease seventeen of the executives have been sentenced to serve time in U.S. prisons or have entered into plea agreements.

**F.    Illustrative Examples of Defendants' Conspiratorial Conduct**

203.    Illustrative examples of Defendants' conspiratorial conduct in the market for Valve Timing Control Devices include, but are not limited to the following:

204.



REDACTED

205.

206.

REDACTED



207.

208.

209.

REDACTED



210.

## DAMAGE TO PLAINTIFFS AND OTHER AUTOMOBILE DEALERS CAUSED BY DEFENDANTS' ILLEGAL ACTIVITIES

211.     Defendants' conspiracy resulted in Defendants charging inflated prices to firms who directly purchased Valve Timing Control Devices from them and in those purchasers raising their prices to subsequent purchasers.

212.     Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Valve Timing Control Devices they sold to Plaintiffs and the Classes, firms who sold such Valve Timing Control Devices and vehicles passed Defendants' overcharges on to Plaintiffs and the Classes.

213.     Plaintiffs and the Classes are entitled to the overcharges they paid for Valve Timing Control Devices.

REDACTED

214.     Plaintiffs have standing and have suffered damage compensable by indirect purchaser laws and they and members of the classes they seek to represent have sustained significant damage and injury as a result of Defendants' conspiracy.

## CLASS ACTION ALLEGATIONS

215.     Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All automobile dealers that, during the Class Period, (a) indirectly purchased Valve Timing Control Devices manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased vehicles containing Valve Timing Control Devices manufactured or sold by a Defendant or any current or former subsidiary, affiliate thereof or co-conspirator.

216.     Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the antitrust, unfair competition, unjust enrichment, and consumer protection laws of the states whose laws are set forth in the Second and Third Claims below, (except California as to unjust enrichment claims), as well as the unjust enrichment laws of Missouri and Massachusetts.  The states whose laws are set forth in the Second and Third Claims below, as well as Missouri and Massachusetts, are collectively referred to as the "Indirect Purchaser States."  These claims are brought by Plaintiffs on behalf of themselves and entities in the Indirect Purchaser States listed in the Second, Third and Fourth Claims as follows (the "Damages Class"):

> All automobile dealers, in the Indirect Purchaser States, that, during the Class Period (a) indirectly purchased Valve Timing Control Devices manufactured or sold by one of Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator or (b) purchased vehicles containing Valve Timing Control Devices manufactured or sold by one of Defendants or any current or former subsidiary, affiliate or co-conspirator thereof.

REDACTED

217.     The Nationwide Class and the Damages Class are referred to herein as the

"Classes."  Excluded from the Classes are Defendants, their parent companies, subsidiaries and

affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal

government, states and their subdivisions, agencies and instrumentalities, any judicial officer

presiding over this matter, persons who purchased Valve Timing Control Devices directly, and

persons in the End-Payor Class, as defined in the End-Payor complaint.

218.     While Plaintiffs do not know the exact number of the members of the Classes,

Plaintiffs believe there are (at least) thousands of members in each Class.

219.     Common questions of law and fact exist as to all members of the Classes.  This is

particularly true given the nature of Defendants' and their co-conspirators' conspiracy, which

was generally applicable to all the members of both Classes, thereby making appropriate relief

with respect to the Classes as a whole.  Such questions of law and fact common to the Classes

include, but are not limited to:

      (a)     Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Valve Timing Control Devices sold in the United States;

      (b)     The identity of the participants of the alleged conspiracy;

      (c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

      (d)     Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

      (e)     Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief;

      (f)     Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

REDACTED

(g)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)     The effect of the alleged conspiracy on the prices of Valve Timing Control Devices sold in the United States during the Class Period;

(i)     Whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)     Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

(k)     The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)     The appropriate class-wide measure of damages for the Damages Class.

220.     Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Valve Timing Control Devices purchased indirectly from Defendants and/or their co-conspirators.

221.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

222.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

223.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of

REDACTED

similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

224.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

### PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

225.    Defendants' price-fixing conspiracy had the following effects, among others:

(a)    Price competition has been restrained or eliminated with respect to Valve Timing Control Devices;

(b)    The prices of Valve Timing Control Devices have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)    Indirect purchasers of Valve Timing Control Devices have been deprived of free and open competition;

(d)    Defendants charged direct purchasers of their Valve Timing Control Devices inflated prices as a result of their conspiracy;

(e)    Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Valve Timing Control Devices they sold to Plaintiffs and the Classes, firms who sold Defendants' Valve Timing Control Devices and vehicles to Plaintiffs and the Classes passed Defendants' overcharges  on to them;

(f)    Defendants' overcharges passed through each level of distribution as they traveled to Plaintiffs and the Classes; and

(g)    Automobile dealers purchasing Valve Timing Control Devices and vehicles containing Valve Timing Control Devices have been deprived of free and open competition.

REDACTED

      (h)     Indirect purchasers of Valve Timing Control Devices paid artificially inflated prices.

226.    During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for Valve Timing Control Devices, as a result of Defendants' conspiracy.

227.    An increase in the prices of Valve Timing Control Devices caused an increase in the price of vehicles during the Class Period.

228.    Valve Timing Control Devices comprise a significant portion of the price of a vehicle.

229.    The markets for Valve Timing Control Devices and vehicles are inextricably linked and intertwined because the market for Valve Timing Control Devices exists to serve the vehicle market.  Without the vehicles, the Valve Timing Control Devices have little to no Valve because they have no independent utility and must be inserted into vehicles to serve any function.  Indeed, the demand for vehicles creates the demand for Valve Timing Control Devices.  As stated in the 2010 Annual Report of Lear Corporation, an automobile parts supplier: "Our sales are driven by the number of vehicles produced by the automotive manufacturers, which is ultimately dependent on consumer fleet demand for automotive vehicles."

230.    Valve Timing Control Devices are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle.  As a result, Valve Timing Control Devices follow a traceable physical chain of distribution from Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Valve Timing Control Devices can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

231.    Just as Valve Timing Control Devices can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of

REDACTED

Valve Timing Control Devices affect prices paid by indirect purchasers of new motor vehicles containing Valve Timing Control Devices and Valve Timing Control Devices purchased for repair purposes.

232.    Valve Timing Control Devices have their own part numbers, which permit them to be tracked.

233.    Valve Timing Control Devices can be removed from a finished vehicle and replaced.

234.    The Valve Timing Control Devices subject to Defendants' conspiracy and at issue in this lawsuit only have one use: to be inserted into vehicles.  Whether Valve Timing Control Devices are sold by themselves or in vehicles, their purpose is to be inserted into vehicles.

235.    The purpose of the conspiratorial conduct of Defendants and their co- conspirators was to raise, fix, rig or stabilize the price of Valve Timing Control Devices and, as a direct and foreseeable result, the price of new motor vehicles containing Valve Timing Control Devices and the price of Valve Timing Control Devices purchased for repair purposes.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis - called regression analysis - is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs.  Thus, an economist can isolate and identify only the impact of an increase in the price of Valve Timing Control Devices on prices for new motor vehicles even though such products contain a number of other components whose prices may be changing over time.  A regression model can explain how variation in the price of Valve Timing Control

REDACTED

Devices affects changes in the price of new motor vehicles. In such models, the price of Valve Timing Control Devices would be treated as an independent or explanatory variable. The model can isolate how changes in the price of Valve Timing Control Devices impact the price of new motor vehicles containing Valve Timing Control Devices while controlling for the impact of other price-determining factors.

236.    The precise amount of the overcharge impacting the prices of new motor vehicles containing Valve Timing Control Devices can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supracompetitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and class members can be quantified.

237.    By reason of the violations of the antitrust law alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Valve Timing Control Devices than they would have paid in the absence of Defendants' and their co-conspirators' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent, and Plaintiffs' and Class members' damages are measurable.

**PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS**

**A.      The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not And Could Not Discover Their Claims**

238.    Plaintiffs repeat and re-allege the allegations set forth above.

239.    Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) September 26, 2013, the date that the DOJ publicly

REDACTED

announced Defendant Hitachi Automotive Systems, Ltd.'s anticipated guilty plea. ███████

███████████████████████████████████████████

240.    Plaintiffs and the members of the Classes are automobile dealers who purchased automobiles or purchased Valve Timing Control Devices to replace or repair damaged or defective Valve Timing Control Devices.

241.    They had no direct contact or interaction with Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before September 26, 2013, the date that the DOJ publicly announced Defendant Hitachi Automotive Systems, Ltd.'s anticipated guilty plea, ████████████

████████████████

242.    No information in the public domain was available to the Plaintiffs and the members of the Classes prior to September 26, 2013, the date that the DOJ publicly announced Defendant Hitachi Automotive Systems, Ltd.'s anticipated guilty plea, that revealed sufficient information to suggest that any one of the Defendants were involved in a criminal conspiracy to price-fix and rig bids for Valve Timing Control Devices. Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that they and their co-conspirators had engaged in the combination and conspiracy alleged herein.

243.    For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

REDACTED

### B.   Fraudulent Concealment Tolled the Statute of Limitations

244.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes.  Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until before September 26, 2013, the date that the DOJ publicly announced Defendant Hitachi Automotive Systems, Ltd.'s anticipated guilty plea

245.    Because Defendants' agreements, understandings, and conspiracies were kept secret until September 26, 2013, Plaintiffs and members of the Classes were unaware before that time of Defendants' unlawful conduct, and they did not know before then that they were paying supracompetitive prices for Valve Timing Control Devices throughout the United States during the Class Period.  No information, actual or constructive, was ever made available to Plaintiffs and the members of the Classes that indicated to Plaintiffs that they were being injured by Defendants' unlawful conduct.

246.    The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

247.    Defendants had secret communications to collusively fix prices, rig bids, and allocate markets for Valve Timing Control Devices.

248.    Defendants also concealed their conspiracy by submitting bids to OEMs, to give the appearance of competition, despite having already determined among themselves who would win each bid.

249.    By its very nature, Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing.  Valve Timing Control Devices are not exempt from

REDACTED

antitrust regulation, and thus, before September 26, 2013, Plaintiffs reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Valve Timing Control Devices prices before September 26, 2013, ███████████████████████████████

███████████████████████████████████████████

250.    Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

251.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed until September 26, 2013, the date that the DOJ publicly announced Defendant Hitachi Automotive Systems, Ltd.'s anticipated guilty plea █████████████████████████████████████

███████████████████████████████████████ Before that time, no facts or information would have caused a reasonably diligent person to investigate whether Aisin, Delphi, or Mikuni had participated in the conspiracy.

252.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to the claims of Plaintiffs and the members of the Classes.

REDACTED

## FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

253.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

254.     Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

255.     The acts done by Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

256.     At least as early as January 2000, and continuing until at least the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Valve Timing Control Devices, thereby creating anticompetitive effects.

257.     The anticompetitive acts were intentionally directed at the United States market for Valve Timing Control Devices and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Valve Timing Control Devices throughout the United States.

258.     The conspiratorial acts and combinations have caused unreasonable restraints in the market for Valve Timing Control Devices

259.     As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Valve Timing Control

REDACTED

Devices have been harmed by being forced to pay inflated, supracompetitive prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

260.     In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

261.     Defendants' and their co-conspirators' conspiracy had the following effects, among others:

(a)      Price competition in the market for Valve Timing Control Devices has been restrained, suppressed, and/or eliminated in the United States;

(b)      Prices for Valve Timing Control Devices sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)      Plaintiffs and members of the Nationwide Class who purchased Valve Timing Control Devices indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

262.     Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices than they would have paid and will pay in the absence of the conspiracy.

263.     Plaintiffs and members of the Nationwide Class will continue to be subject to Defendants' price-fixing, bid-rigging, and market allocations, which will deprive Plaintiffs and members of the Nationwide Class of the benefits of free competition, including competitively-priced Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

REDACTED

264.    Plaintiffs and members of the Nationwide Class will continue to lose funds due to overpayment for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices because they are required to purchase vehicles and Valve Timing Control Devices to continue to operate their businesses.

265.    Plaintiffs and members of the Nationwide Class continue to purchase vehicles and Valve Timing Control Devices on a regular basis.

266.    Vehicles and Valve Timing Control Devices continue to be sold at inflated and supracompetitive prices.

267.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

268.    Plaintiffs and members of the Nationwide Class will be at the mercy of Defendants' unlawful conduct until the Court orders an injunction.

269.    Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

270.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

271.    From as early as January 2000 until at least the filing of this Complaint, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Valve Timing Control Devices in unreasonable restraint of trade and commerce and in violation of the various state antitrust statutes set forth below.

272.    The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially

REDACTED

supracompetitive prices, Valve Timing Control Devices, and to allocate customers for Valve

Timing Control Devices in the United States.

273.    In formulating and effectuating this conspiracy, Defendants and their co-

conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)    participating in meetings and conversations among themselves in the
United States during which they agreed to price Valve Timing Control
Devices at certain levels, and otherwise to fix, increase, inflate, maintain,
or stabilize effective prices paid by Plaintiffs and members of the
Damages Class with respect to Valve Timing Control Devices sold in the
United States;

(b)    allocating customers and markets for Valve Timing Control Devices in the
United States in furtherance of their agreements; and

(c)    participating in meetings and conversations among themselves in the
United States to implement, adhere to, and police the unlawful agreements
they reached.

274.    Defendants and their co-conspirators engaged in the actions described above for

the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize

prices and to allocate customers with respect to Valve Timing Control Devices.

275.    Defendants' anticompetitive acts described above were knowing and willful and

constitute violations or flagrant violations of the following state antitrust statutes.

276.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Arizona Revised Statutes, §§ 44-1401, *et seq*.

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the

following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed,

and eliminated throughout Arizona; (2) Valve Timing Control Devices prices were raised, fixed,

maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members

of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members

REDACTED

of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

277.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Valve Timing Control Devices at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Valve Timing Control Devices.

REDACTED

(c)      For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following:  (1) Fixing, raising, stabilizing, and pegging the price of Valve Timing Control Devices; and (2) Allocating among themselves the production of Valve Timing Control Devices.

(d)      The combination and conspiracy alleged herein has had, inter alia, the following effects:  (1) Price competition in the sale of Valve Timing Control Devices has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Valve Timing Control Devices sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Valve Timing Control Devices or vehicles containing Valve Timing Control Devices manufactured by Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Valve Timing Control Devices than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

278.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

REDACTED

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Valve Timing Control Devices or vehicles in the District of Columbia, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Valve Timing Control Devices or vehicles in the District of Columbia, paid supracompetitive, artificially inflated prices for Valve Timing Control Devices, including in the District of Columbia.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

279.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, et seq.

REDACTED

   (a) Defendants' unlawful conduct had the following effects: (1) Valve Timing Control Devices' price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Valve Timing Control Devices' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

   (b) During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

   (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

   (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*

  280. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, et seq.

   (a) Defendants' combinations or conspiracies had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Valve Timing Control Devices prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

REDACTED

the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control

Devices and vehicles containing Valve Timing Control Devices.

        (b)      During the Class Period, Defendants' illegal conduct substantially affected

Illinois commerce.

        (c)      As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

        (d)      By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of 740 Illinois Compiled Statutes 10/1, et seq.  Accordingly,

Plaintiffs and members of the Damages Class seek all forms of relief available under 740 Illinois

Compiled Statutes 10/1, *et seq.*[2]

      281.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Iowa Code §§ 553.1, *et seq*.

        (a)      Defendants' and their co-conspirators' combinations or conspiracies had

the following effects:  (1) Valve Timing Control Devices price competition was restrained,

suppressed, and eliminated throughout Iowa; (2) Valve Timing Control Devices prices were

raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs

and members of the Damages Class were deprived of free and open competition; and (4)

Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices

for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

---

[2] Dealership Plaintiffs recognize that their claims under the Illinois Antitrust Act were dismissed in the *Wire Harness* action.  Dealership Plaintiffs assert this claim here, individually and collectively, to preserve it for appeal

REDACTED

       (b)      During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

       (c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

       (d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

      282.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

       (a)      Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

       (b)      During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

       (c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

REDACTED

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

283.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Maine; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

REDACTED

284.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

285.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Valve Timing Control Devices prices

REDACTED

were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3)

Plaintiffs and members of the Damages Class were deprived of free and open competition; and

(4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated

prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)      During the Class Period, Defendants' illegal conduct substantially affected

Minnesota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*.  Accordingly, Plaintiffs and

members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et*

*seq*.

286.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a)      Defendants' and their co-conspirators' combinations or conspiracies had

the following effects:  (1) Valve Timing Control Devices price competition was restrained,

suppressed, and eliminated throughout Mississippi; (2) Valve Timing Control Devices prices

were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3)

Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or

purchased Valve Timing Control Devices or vehicles in Mississippi were deprived of free and

open competition, including in Mississippi: and (4) Plaintiffs and members of the Damages

Class, including those who resided in Mississippi and/or purchased Valve Timing Control

91

REDACTED

Devices or vehicles in Mississippi paid supracompetitive, artificially inflated prices for Valve

Timing Control Devices, including in Mississippi.

(b)      During the Class Period, Defendants' illegal conduct substantially affected

Mississippi commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs

and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-

21-1, *et seq.*

287.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Nebraska Revised Statutes §§ 59-801, *et seq*.

(a)      Defendants' and their co-conspirators' combinations or conspiracies had

the following effects:  (1) Valve Timing Control Devices price competition was restrained,

suppressed, and eliminated throughout Nebraska; (2) Valve Timing Control Devices prices were

raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3)

Plaintiffs and members of the Damages Class were deprived of free and open competition; and

(4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated

prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)      During the Class Period, Defendants' illegal conduct substantially affected

Nebraska commerce.

REDACTED

      (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      (d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

      288.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

      (a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; 3) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Valve Timing Control Devices or vehicles in Nevada, were deprived of free and open competition including in Nevada; and (4) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Valve Timing Control Devices or vehicles in Nevada, paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices, including in Nevada.

      (b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

REDACTED

      (a)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      (b)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

      289.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

      (a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

      (b)    During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

      (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

REDACTED

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

290.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq*.

REDACTED

291.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout New York; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Valve Timing Control Devices or vehicles in New York, were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Valve Timing Control Devices or vehicles in New York, paid supracompetitive, artificially inflated prices for Valve Timing Control Devices when they purchased, including in New York, Valve Timing Control Devices or vehicles containing Valve Timing Control Devices, or purchased vehicles and Valve Timing Control Devices that were otherwise of lower quality than they would have been absent Defendants' and their co-conspirators' illegal acts, or were unable to purchase Valve Timing Control Devices or vehicles that they would have otherwise have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

REDACTED

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

292.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Valve Timing Control Devices or vehicles in North Carolina, were deprived of free and open competition, including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Valve Timing Control Devices or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for Valve Timing Control Devices or vehicles containing Valve Timing Control Devices, including in North Carolina.

(b)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly,

REDACTED

Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

293.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

(a)   Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)   During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

294.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

REDACTED

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

295.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class, including those who resided in South Dakota

REDACTED

and/or purchased Valve Timing Control Devices or vehicles in South Dakota, were deprived of

free and open competition, including in South Dakota; and (4) Plaintiffs and members of the

Damages Class, including those who resided in South Dakota and/or purchased Valve Timing

Control Devices or vehicles in South Dakota, paid supracompetitive, artificially inflated prices

for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices,

including in South Dakota.

(b)     During the Class Period, Defendants' illegal conduct had a substantial

effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*.  Accordingly,

Plaintiffs and members of the Damages Class seek all relief available under South Dakota

Codified Laws Ann. §§ 37-1, *et seq*.

296.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had

the following effects:  (1) Valve Timing Control Devices price competition was restrained,

suppressed, and eliminated throughout Tennessee; (2) Valve Timing Control Devices prices were

raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3)

Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or

purchased Valve Timing Control Devices or vehicles in Tennessee, were deprived of free and

REDACTED

open competition, including in Tennessee; and (4) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased Valve Timing Control Devices or vehicles in Tennessee, paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices, including in Tennessee.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

297.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq*.

(a)      Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Utah; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

REDACTED

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

298.    Defendants have entered into an unlawful agreement in restraint of trade in violation of 9 Vermont Stat. Ann. § 2453, *et seq.*

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

REDACTED

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 9 Vermont Stat. Ann. § 2453, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under 9 Vermont Stat. Ann. § 2453, *et seq*. Plaintiffs are entitled to relief pursuant to 9 Vermont Ann. Stat. § 2465 and any other applicable authority.

299.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Valve Timing Control Devices or vehicles in West Virginia, were deprived of free and open competition including in West Virginia; and (4) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Valve Timing Control Devices or vehicles in West Virginia, paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices, including in West Virginia.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

REDACTED

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq*.

300.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Valve Timing Control Devices prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

301.     Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' and their co-conspirators' unlawful combination, contract, conspiracy and agreement.  Plaintiffs and members of the

104

REDACTED

Damages Class have paid more for Valve Timing Control Devices than they otherwise would have paid in the absence of Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

302.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

303.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**THIRD CLAIM FOR RELIEF**
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

304.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

305.    Defendants knowingly engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

306.    Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

(a)    Defendants knowingly agreed to, and did in fact act in, restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Valve Timing Control Devices were sold, distributed, or

REDACTED

obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)     Defendants' unlawful conduct had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Valve Timing Control Devices prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

307.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

106

REDACTED

(a)     During the Class Period, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

(c)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(d)     Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(e)     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq*., of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

107

REDACTED

(f)     Defendants' acts or practices are unfair to purchasers of Valve Timing Control Devices (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(g)     Defendants' unlawful conduct had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout California; (2) Valve Timing Control Devices prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) Plaintiffs and members of the Damages Class, including those who resided in California and/ or purchased Valve Timing Control Devices or vehicles in California, were deprived of free and open competition, including in California; and (4) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased Valve Timing Control Devices or vehicles in California, paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices, including in California.

(h)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(j)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiffs and the members of the Damages Class are accordingly entitled to

108

REDACTED

equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

308.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

(a)    Defendants' unlawful conduct had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Florida; (2) Valve Timing Control Devices prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class, including those who resided in Florida and/or purchased Valve Timing Control Devices or vehicles in Florida were deprived of free and open competition, including in Florida; (4) Plaintiffs and members of the Damages Class, including those who resided in Florida and/or purchased Valve Timing Control Devices or vehicles in Florida paid supracompetitive, artificially inflated prices for Valve Timing Control Devices, including in Florida.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and purchasers of Valve Timing Control Devices and vehicles in Florida.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

REDACTED

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

309.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)     Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Valve Timing Control Devices were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Valve Timing Control Devices.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing Valve Timing Control Devices because they were unaware of the unlawful overcharge and because they had to purchase Valve Timing Control Devices in order to be able to operate their vehicles.  Defendants' conduct with regard to sales of Valve Timing Control Devices, including their illegal conspiracy to secretly fix the price of Valve Timing Control Devices at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public.  Defendants took grossly unfair advantage of Plaintiffs.

110

REDACTED

(c)    The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Valve Timing Control Devices as set forth in N.M.S.A., § 57-12-2E, due to the inflated prices paid by Plaintiffs and Class members for vehicles and Valve Timing Control Devices.

(d)    Defendants' unlawful conduct had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Valve Timing Control Devices prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(e)    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(f)    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(g)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

310.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

REDACTED

(a)     The Defendants and their co-conspirators agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Valve Timing Control Devices were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants deceptively led purchasers, such as Plaintiffs and Class members, to believe that the Valve Timing Control Devices they had purchased as replacements and inside vehicles had been sold at legal competitive prices, when they had in fact been sold at collusively obtained inflated prices, that were passed on to them.

(c)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in injuries to purchasers and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     The Defendants' unlawful conduct had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout New York; (2) Valve Timing Control Devices prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class including those who resided in New York and/or purchased Valve Timing control Devices or vehicles in New York were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class including those who resided in New York and/or purchased Valve Timing control Devices or vehicles in New York paid

REDACTED

supracompetitive, artificially inflated prices for Valve Timing Control Devices, including in New York.

(e)     Because of Defendants' unlawful trade practices in the State of New York, New York purchasers who indirectly purchased Valve Timing Control Devices were misled to believe that they were paying a fair price for Valve Timing Control Devices or the price increases for Valve Timing Control Devices were for valid business reasons; and similarly situated purchasers were affected by Defendants' conspiracy.

(f)     During the Class Period, the Defendants' illegal conduct substantially affected New York commerce and New York purchasers.

(g)     During the Class Period, the Defendants directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Valve Timing Control Devices in New York.

(h)     Defendants knew that their unlawful trade practices with respect to pricing Variable Valve Timing Control Devices would have a broad impact, causing class members who indirectly purchased Valve Timing Control Devices to be injured by paying more for Valve Timing Control Devices than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(i)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

311.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a)     The Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial

REDACTED

and non-competitive levels, the prices at which Valve Timing Control Devices were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in injury to purchasers and broad adverse impact on the public at large, and harmed the public interest of North Carolina purchasers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)     The Defendants' unlawful conduct had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Valve Timing Control Devices prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class including those who resided in North Carolina and/or purchased Valve Timing Control Devices or vehicles in North Carolina were deprived of free and open competition, including in North Carolina; and (4) Plaintiffs and members of the Damages Class including those who resided in North Carolina and/or purchased Valve Timing Control Devices or vehicles in North Carolina paid supracompetitive, artificially inflated prices for Valve Timing Control Devices, including in North Carolina.

(d)     During the Class Period, the Defendants' illegal conduct substantially affected North Carolina commerce and purchasers in North Carolina.

(e)     Defendants deceptively concealed their unlawful activities by conducting meetings and conversations in secret.

REDACTED

(f)     During the Class Period, the Defendants directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Valve Timing Control Devices in North Carolina.

(g)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury.  The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

312.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Valve Timing Control Devices prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

REDACTED

      (d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, et seq., and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

313.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

      (a)     Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Valve Timing Control Devices were sold, distributed, or obtained in Vermont.

      (b)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning their unlawful activities and artificially inflated prices for Valve Timing Control Devices.  Defendants owed a duty to disclose such facts, and Defendants breached that duty of by their silence.  Defendants misrepresented to all purchasers during the Class Period that their Valve Timing Control Devices prices were competitive and fair.

      (c)     Defendants' unlawful conduct had the following effects:  (1) Valve Timing Control Devices price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Valve Timing Control Devices prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Valve Timing Control Devices and vehicles containing Valve Timing Control Devices.

REDACTED

(d)     As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Valve Timing Control Devices, misled purchasers acting reasonably under the circumstances to believe that they were purchasing Valve Timing Control Devices at prices set by a free and fair market.  Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Damages Class)**

314.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

315.     Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims, *supra*., except California.  Plaintiffs also bring this claim under the laws of Missouri and Massachusetts, on behalf of the Plaintiffs who have their primary places of business in those states and the class members in those states.

316.     As a result of their unlawful conduct described above, Defendants have been, and will continue to be, unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Valve Timing Control Devices.

REDACTED

317.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Valve Timing Control Devices.

318.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a *pro rata* basis.

319.    Pursuit of any remedies against the firms from whom Plaintiffs and the Class members purchased Valve Timing Control Devices and vehicles containing Valve Timing Control Devices subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

A.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)    A *per se* violation of Section 1 of the Sherman Act;

REDACTED

        (c)     An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

        (d)     Acts of unjust enrichment by Defendants as set forth herein.

C.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.     Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and unjust enrichment;

REDACTED

G.      Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.      Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED:  December 22, 2014.

Respectfully submitted,


/s/  *Gerard V. Mantese*
Gerard V. Mantese
(Michigan Bar No. P34424)
David Hansma
(Michigan Bar No. P71056)
Brendan Frey
(Michigan Bar No. P70893)
Mantese Honigman Rossman and
Williamson, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com

120

REDACTED

| | |
|---|---|
| Don Barrett | Jonathan W. Cuneo |
| Brian Herrington | Joel Davidow |
| David McMullan | Daniel Cohen |
| Barrett Law Group, P.A. | Victoria Romanenko |
| P.O. Box 927 | Yifei Li |
| 404 Court Square | Cuneo Gilbert & LaDuca, LLP |
| Lexington, MS 39095 | 507 C Street, N.E. |
| Telephone: (662) 834-2488 | Washington, DC 20002 |
| dbarrett@barrettlawgroup.com | Telephone: (202) 789-3960 |
| bherrington@barrettlawgroup.com | jonc@cuneolaw.com |
| dmcmullan@barrettlawgroup.com | joel@cuneolaw.com |
| | danielc@cuneolaw.com |
| | vicky@cuneolaw.com |
| | evelyn@cuneolaw.com |

| | |
|---|---|
| Shawn M. Raiter | Michael J. Flannery |
| Larson • King, LLP | Cuneo Gilbert & LaDuca, LLP |
| 2800 Wells Fargo Place | 300 North Tucker |
| 30 East Seventh Street | Suite 801 |
| St. Paul, MN  55101 | St. Louis, MO  63101 |
| Telephone: (651) 312-6500 | Telephone:  (314) 226-1015 |
| sraiter@larsonking.com | mflannery@cuneolaw.com |
| psand@larsonking.com | |

| | |
|---|---|
| Phillip Duncan | Thomas P. Thrash |
| Richard Quintus | Thrash Law Firm, P.A. |
| Duncan Firm, P.A. | 1101 Garland Street |
| 900 S. Shackleford, Suite 725 | Little Rock, AR 72201 |
| Little Rock, AR 72211 | Telephone: (501) 374-1058 |
| Telephone:  (501) 228-7600 | tomthrash@sbcglobal.net |
| phillip@duncanfirm.com | |
| richard@duncanfirm.com | |

| | |
|---|---|
| Dewitt Lovelace | Charles Barrett |
| Valerie Nettles | Charles Barrett, P.C. |
| Lovelace & Associates, P.A. | 6518 Highway 100 |
| Suite 200 | Suite 210 |
| 12870 US Hwy 98 West | Nashville, Tennessee 37205 |
| Miramar Beach, FL  32550 | Telephone: (615) 515-3393 |
| Telephone: (850) 837-6020 | charles@cfbfirm.com |
| dml@lovelacelaw.com | |
| alex@lovelacelaw.com | |

Gregory Johnson
G. Johnson Law, PLLC
6688 145th Street West,

REDACTED

Apple Valley, MN 55124
Telephone: (952) 930-2485
greg@gjohnsonlegal.com

*Attorneys for Dealership Plaintiffs*

REDACTED

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2014 I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

    /s/ Brendan Frey

Brendan Frey (Michigan Bar No. P70893)

Mantese Honigman Rossman

 and Williamson, P.C.

1361 E. Big Beaver Road

Troy, Michigan 48083

Phone: (248) 457-9200 ext. 203

Fax: (248) 457-9201

Email: bfrey@manteselaw.com