**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                    MASTER FILE NO. 12-md-02311

_____

In Re: Valve Timing Control Devices     HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Automobile Dealer Plaintiffs            2:13-cv-02502
End-Payor Plaintiffs                    2:13-cv-02503
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant Delphi Powertrain Systems Korea Ltd.'s Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaints for Lack of Personal Jurisdiction and Failure to State a Claim (Doc. No. 61 in 13-2502, Doc. No. 58 in 13-2503). The Court heard oral argument on May 6, 2015, and at the conclusion of the argument, took this matter under advisement. For the reasons stated below, Defendant's motion is **GRANTED,** and Delphi Powertrain Systems Korea Ltd. is **DISMISSED**.

**I. RELEVANT FACTS**

Automobile Dealership Plaintiffs ("ADPs") and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Indirect Purchaser Plaintiffs" or "IPPs") filed separate consolidated amended class action complaints alleging several federal and state law

antitrust claims against Defendants. In their respective complaints, the EPPs and ADPs allege that Delphi Powertrain Systems Korea Ltd. ("DPSK") engaged "in a long running conspiracy to unlawfully fix, raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Valve Timing Control Devices" ("VTCD"). (See Doc. No. 33 in 13-2502 at ¶ 1, hereinafter "ADPs' Complaint;" Doc. No. 27 in 13-2503 at ¶ 1, hereinafter "EPPs' Complaint"). It is undisputed that DPSK is a limited liability company under the laws of the Republic of Korea, with its principal place of business in Korea. (See Doc. No. 58 in 13-2502, Decl. of James J. Rim, Member of Board of Directors of DPSK at ¶ 3).

According to IPPs, DPSK "directly or indirectly sold or marketed substantial quantities of Valve Timing Control Devices throughout the United States. . .had substantial aggregate contacts with the United States. . .targeted customers in the United States" and "engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing, located in, or doing business throughout the United States." (ADPs' Complaint at ¶ 23; EPPs' Complaint at ¶ 23 ) Indirect Purchaser Plaintiffs allege that DPSK knew and took advantage that a substantial portion of its products are sold, used or otherwise, end up in the United States. (ADPs' Complaint at ¶¶ 23-25; EPPs' Complaint at ¶¶ 23-25).

## II. STANDARD OF REVIEW

Before its answer is filed, a defendant may move to dismiss for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "Where personal jurisdiction is challenged in a 12(b)(2) motion, the plaintiff has the burden of establishing that

2

jurisdiction exists." Am. Greetings Corp. v. Cohn, 839 F. 2d 1164, 1168 (6th Cir. 1988); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").

If a district court rules on such a motion before trial, the court, in its discretion, "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). The district court is granted considerable discretion in this decision and will be reversed only for abuse of discretion. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991); Mich. Nat'l Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989). The method the court selects will affect the magnitude of the burden on the plaintiff to avoid dismissal. Serras, 875 F.2d at 1214. Where, as is the case here, the court relies solely on the parties' affidavits to reach its decision on the motion, the burden rests on the plaintiff to establish a *prima facia* showing of jurisdiction in order to avoid dismissal, Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005), and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

In considering 12(b)(2) motions, the court does not weigh the controverting assertions of the moving party due to its interest in "prevent[ing] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." CompuServe, Inc., 89 F.3d at 1262 (quoting Theunissen, 935 F.2d at 1459).

### III. ANALYSIS

#### A. Personal Jurisdiction

The Supreme Court has held that to subject a nonresident defendant to personal jurisdiction, due process requires that he must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's "conduct and connection with the forum State" must be "such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction in fact exits. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002).

A party is subject to the personal jurisdiction of the Court through either specific or general jurisdiction. See J Mcintyre Machinery, Ltd. v. Nicastro, __U.S. __, 131 S. Ct. 2780, 2789 (2011). Whether general or specific jurisdiction exists turns on the nature of the defendant's contacts with the forum. Bird v. Parsons, 289 F.3d 865, 873 (6th Cir. 2002).

When "a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States, and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States." Med. Mut. v. deSoto, 245 F.3d 561, 567-568 (6th Cir. 2001). For federal antitrust claims, 15 U.S.C. § 22 authorizes service of process over an antitrust defendant "wherever it may be found."

Here, personal jurisdiction exists, provided DPSK has "sufficient minimum contacts with the United States" to satisfy the due process requirements of the Fifth Amendment. Med. Mut. of Ohio, 245 F.3d at 566–67. "This inquiry parallels the more traditional personal-jurisdiction analysis under which a defendant must have 'minimum contacts' " with the forum state pursuant to the state's long-arm statute. Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449-50 (6th Cir. 2012) (citing Med. Mut. of Ohio, 245 F.3d at 566–67).

### 1. General Jurisdiction

The parties dispute whether the Court may exercise general jurisdiction over DPSK inasmuch as it is not "at home" in the United States. See Daimler AG v. Bauman, __ U.S. __, 134 S.Ct. 746, 761 (2014) (holding that to exercise general jurisdiction over a foreign corporation, the corporation had to be "at home" in the forum). The Supreme Court explained that although the phrase "at home" applies not only to the forum in which the corporation is incorporated, it also includes "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify a suit. . .on causes of action arising from dealings entirely distinct from those activities." Id., (quotation omitted).

Because DPSK is a Korean corporation with its principal place of business in Korea, it is not "at home" in the traditional sense. Instead, IPPs assert that the Court may exercise general jurisdiction over DPSK because it is an alter-ego of Defendant Delphi Automotive LLP. According to IPPs, Delphi Automotive LLP controlled DPSK. The Court rejects this basis for jurisdiction. The "alter-ego theory permits parent corporations to be subjected to personal jurisdiction based on the actions of their

subsidiaries, not vice versa." Alexander Associates, Inc. v. FCMP, Inc., No. 10-12355, 2012 WL 1033464, at *18 (E.D. Mich. Mar. 27, 2012). Even if that were not the case, the allegations here do not satisfy Michigan law.

To pierce the corporate veil and hold the parent company liable for acts of a subsidiary, the evidence must show there is "such a complete identity between the defendant and the corporation as to suggest that one was simply the alter-ego of the other." Pettaway v. McConaghy, 116 N.W.2d 789, 790 (Mich. 1962). In the alternative, "[t]here must be evidence that the use of the corporation was improper." Mattner v. Jennaro & Assocs., Inc., No. 89-2366, 1991 WL 159452 at *3 (6th Cir. Aug. 20, 1991) (internal citation omitted) (applying Michigan law); accord Precision, Inc. v. Kenco/Williams, Inc., 66 Fed. Appx. 1, 4 (6th Cir. 2003). In this case, the only specific allegation is that the chief operating officer of a Delphi entity has ultimate responsibility for the Powertrain Division, including DPSK. This allegation merely reflects a typical corporate relationship and does not satisfy IPPs' burden. Because IPPs have not met their burden to show the existence of general jurisdiction, the Court considers whether it may exercise specific jurisdiction over DPSK.

### 2. Specific Jurisdiction

Specific jurisdiction subjects the defendant to actions in the forum arising out of or relating to the defendant's contacts with that forum. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test originally laid out in S'ern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Mohasco, 401 F.2d at 381).

### a. Purposeful Availment

The first issue to be addressed relative to specific jurisdiction is whether DPSK "purposefully avail[ed] [itself] of the privilege of acting in the forum or causing a consequence in the forum." Mohasco, 401 F.2d at 381. Indirect Purchaser Plaintiffs advance three grounds to establish purposeful availment. First, IPPs argue that the factor is met because DPSK was involved in a conspiracy designed to have an effect in the United States. Next, IPPs assert the Court may exercise personal jurisdiction because DPSK placed its products in the stream of commerce with intent to harm consumers in the United States. Finally, IPPs argue that personal jurisdiction is proper here because the harmful effects resulting from DPSK's conduct were felt here. The Court discusses the arguments below.

### i. Conspiracy Theory

In support of their assertion that DPSK created a substantial connection with the United States, IPPs rely on the conspiracy theory. According to Indirect Purchaser Plaintiffs, DPSK participated in a conspiracy with other defendants, over whom the Court may exercise jurisdiction. The Court has no basis for imputing the actions of one defendant to another in analyzing jurisdiction in the absence of an explicit directive by

the Sixth Circuit to do so. Despite the passage of more than thirty years since the theory was acknowledged in Chrysler Corp. v. Federes Corp., 643 F.2d 1229, 1236 (6th Cir. 1981), it has never been adopted.

### ii. Stream of Commerce

Next, Indirect Purchaser Plaintiffs assert that DPSK availed itself of the laws of the United States by placing its products in the stream of commerce with the intent to reach the United States. The stream of commerce theory, articulated in Ashai Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987), does not support IPPs' assertion that the exercise of jurisdiction would satisfy due process given the facts of this case. In J. McIntyre Mach., 131 S. Ct. at 2788, the Supreme Court discussed the stream of commerce basis for personal jurisdiction.

> This Court has stated that a defendant's placing goods into the stream of commerce "with the expectation that they will be purchased by consumers within the forum State" may indicate purposeful availment. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (finding that expectation lacking). But that statement does not amend the general rule of personal jurisdiction. It merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum--itself an unexceptional proposition--as where manufacturers or distributors "seek to serve" a given State's market. Id., at 295, 100 S.Ct. 559. The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must "purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson[ v. Denckla], supra, [357 U.S. 235] at 253, 78 S.Ct. 1228 [(1958)]; Insurance Corp.[of Ireland, ltd. v. Compagnie des Bauxites de Guinee], supra, [456 U.S. 694] at 704-705, 102 S.Ct. 2099 [(1987)]("[A]ctions of the defendant may amount to a legal submission to the jurisdiction of the court"). Sometimes a defendant does so by sending its goods rather than its agents. The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

8

Id. (Kennedy, J., plurality opinion). Although the four justice plurality opinion is not binding law, this Court finds the allegations regarding targeting consumers in the United States guide the analysis.

Specifically, Indirect Purchaser Plaintiffs allege that DPSK sold price-fixed products to Korean manufacturers and that Original Equipment Manufacturers sometimes include the ultimate destination in Requests for Quotations. At most, this allegation creates an inference that DPSK could have predicted that its goods would reach the United States. The Sixth Circuit, however, has adopted a heightened version of this theory, noting that merely placing products into the stream of commerce, without more, is not a purposeful act directed at the forum. Bridgeport Music, Inc. v. Still N The Water Pub, 327 F.3d 472, 479-80 (6th Cir. 2003) (adopting the stream of commerce "plus" approach articulated by J. O'Connor in Asahi).

Here, DPSK has no contacts with the United States and has not pleaded guilty to criminal conduct in the United States. Moreover, DPSK submitted the declaration of James Rim, who attests that DPSK never designed products specifically for the United States. (Doc. No. 61 in 13-2502, Rim Decl. at ¶ 17). Nor does DPSK market or advertise its products in the United States. IPPs have failed to establish the "plus" required under Sixth Circuit law. Merely placing products into the stream commerce with the potential that they may end up in a specific forum is insufficient.

The Court previously rejected this theory of purposeful availment based on similar facts in the Wire Harness case. See In re Automotive Parts Antitrust Litig., 2013 WL 2456611, at *4-5 (E.D. Mich. June 6, 2013) (rejecting stream of commerce argument

because although the defendant sold wire harnesses to auto manufacturers whose goods reached the United States, there was no evidence that the defendant controlled the distribution decisions of its customers). The Court also rejected this theory in the Bearings case. See In re Automotive Parts Antitrust Litig., 2014 WL 2999271, at *4 (E.D. Mich. July 3, 2014) (rejecting stream of commerce theory based on substantially similar facts in the Wire Harness case).

      The Court is not persuaded that a different outcome is required by the decision in Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 214, 219-20 (6th Cir. 2006) (rejecting the district court's holding that it lacked personal jurisdiction over the defendants where they had "rigged their vessels to sail into the Great Lakes and call at Toledo's port" merely because the "third-party charterer was Canadian"). In Fortis, the Sixth Circuit considered whether a federal court had jurisdiction over the defendant Norwegian companies, which owned and managed a fleet of cargo vessels, some of which had been chartered to a Canadian company. The Canadian company had subchartered one of the vessels to an American company for the purpose of transporting steel coils to Toledo, Ohio. After the steel coils rusted during transit, an insurance underwriter filed suit. The Sixth Circuit found the Norwegian defendants had purposely availed themselves of the privilege of acting in the forum state. They rigged their vessels to ship to Great Lakes ports; they entered into a long-term charter agreement with the Canadian company that shipped on the Great Lakes; they made frequent calls to American ports. Fortis, 450 F.3d at 221-222. The charter agreement was the culmination of the Norwegian defendants' organized efforts over a significant period of

time to take advantage and turn a profit from the American market and the agreement confirmed that "the vessel was suitable for Toledo." Id. at 221.

The circumstances here differ.  DPSK never attempted to sell its products directly in the United States, never attempted to affiliate with an American corporation, never availed itself of any privilege of acting there.  Despite IPPs' characterization, the allegations do not rise to the level of targeting.  Here, there is no suggestion that DPSK controlled the distribution of its VTCD, nor is there any suggestion that DPSK cared where its products were sold.  Therefore, no inference arises that DPSK targeted the United States or that DPSK sought the protection of the forum's laws or benefitted from them.

### iii.  Effects Test

In Calder v. Jones, a professional entertainer domiciled in California sued two *National Enquirer* reporters in California Superior Court for libel resulting from conduct that took place entirely in Florida.  Calder v. Jones, 465 U.S. 783 (1984).  After considering the facts of the case, the Supreme found that California courts could properly exercise personal jurisdiction over the defendants because the "the brunt of the harm. . . was suffered in California."  Id. at 789.  California was "the focal point both of the story and of the harm suffered," and jurisdiction in California was proper "based on the 'effects' of their Florida conduct in California."  Id. at 789.

To support the application of the Calder test, IPPs again argue that the brunt of the harm from the conspiracy was felt in the United States, and their allegations are sufficient to meet the Calder effects test.  The Court disagrees.  The allegations specific to DPSK involves sales in Korea to third parties in Korea.

11

The Sixth Circuit has not given Calder wide berth. The appeals court limits the application "by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises." Scotts Co. v. Aventis S.A., 145 F. App'x. 109, 113 n. 1 (6th Cir. 2005) (citations omitted). DPSK had no contacts with the United States, and the United States cannot be deemed the focal point of DPSK's conduct.

### b.  Connection and Reasonableness

Because IPPs cannot satisfy the first prong of the Mohasco test, there is no need to analyze the other factors: whether DPSK's activities gave rise to Plaintiffs' causes of action, and whether it is reasonable to exercise personal jurisdiction over DPSK. Each element of the test "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." Lak, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1303 (6th Cir. 1989).

### B.  Jurisdictional Discovery

Indirect Purchaser Plaintiffs ask the Court for jurisdictional discovery in the event the Court finds that the exercise of personal jurisdiction over DPSK is unwarranted. Here, the Court finds there is no reasonable basis for expecting that further discovery would reveal contacts sufficient to support personal jurisdiction. Chrysler Corp., 643 F.2d at 1240. It is undisputed that DPSK operated exclusively in Korea. Even if IPPs found that certain RFQs included information that VTCD would be sold abroad, the fact would not constitute purposeful availment.

IV. **CONCLUSION**

For the reasons stated above, the motion is **GRANTED**. DPSK is **DISMISSED**.

**IT IS SO ORDERED.**

Date:  July 23, 2015                                     s/Marianne O. Battani
                                                          MARIANNE O. BATTANI
                                                          United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 23, 2015.

                                                          s/ Kay Doaks
                                                          Case Manager