# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311 |
| | : |
| | : Case No. 12-cv-00102 |
| | : Case No. 12-cv-00202 |
| PRODUCT(S): | : Case No. 12-cv-00302 |
| | : Case No. 12-cv-00602 |
| | : Case No. 13-cv-00702 |
| AUTOMOTIVE WIRE HARNESSES; | : Case No. 13-cv-01002 |
| INSTRUMENT PANEL CLUSTERS; | : Case No. 13-cv-01102 |
| FUEL SENDERS; OCCUPANT SAFETY | : Case No. 13-cv-01302 |
| RESTRAINT SYSTEMS; SWITCHES; | : Case No. 13-cv-01402 |
| STEERING ANGLE SENSORS; HID | : Case No. 13-cv-01502 |
| BALLASTS, ALTERNATORS, | : Case No. 13-cv-01602 |
| STARTERS, IGNITION COILS, MOTOR | : Case No. 13-cv-01702 |
| GENERATORS, INVERTERS, AIR | : Case No. 13-cv-01802 |
| FLOW METERS, FUEL INJECTION | : Case No. 13-cv-02002 |
| SYSTEMS, VALVE TIMING CONTROL | : Case No. 13-cv-02202 |
| DEVICES, ELECTRONIC THROTTLE | : Case No. 13-cv-02402 |
| BODIES, RADIATORS, and ATF | : Case No. 13-cv-02502 |
| WARMERS | : Case No. 13-cv-02602 |
| | : |
| | : |
| This Document Relates to: | : Hon. Marianne O. Battani |
| | : |
| ALL DEALERSHIP ACTIONS | : |
| | : |

**Auto Dealers' Motion for Final Approval of Settlements with Certain Defendants and for Certification of Settlement Classes**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Auto Dealers hereby move the

Court for final approval of the settlements between the Auto Dealers and certain Defendants, which

the Court previously conditionally approved in the above matters, and for certification, pursuant to

Fed. R. Civ. P. 23(b)(2) and 23(b)(3), of the certification, for settlement purposes only, of settlement

classes.

Dated:  November 16, 2015

By: /s/ Gerard V. Mantese
Gerard V. Mantese (P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
Facsimile: (248) 457-9201
gmantese@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Yifei Li
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
Joel@cuneolaw.com
Vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A**.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

1

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 |
| | : | Case No. 12-cv-00102 |
| | : | Case No. 12-cv-00202 |
| PRODUCT(S): | : | Case No. 12-cv-00302 |
| | : | Case No. 12-cv-00602 |
| | : | Case No. 13-cv-00702 |
| AUTOMOTIVE WIRE HARNESSES; | : | Case No. 13-cv-01002 |
| INSTRUMENT PANEL CLUSTERS; | : | Case No. 13-cv-01102 |
| FUEL SENDERS; OCCUPANT SAFETY | : | Case No. 13-cv-01302 |
| RESTRAINT SYSTEMS; SWITCHES; | : | Case No. 13-cv-01402 |
| STEERING ANGLE SENSORS; HID | : | Case No. 13-cv-01502 |
| BALLASTS, ALTERNATORS, | : | Case No. 13-cv-01602 |
| STARTERS, IGNITION COILS, MOTOR | : | Case No. 13-cv-01702 |
| GENERATORS, INVERTERS, AIR | : | Case No. 13-cv-01802 |
| FLOW METERS, FUEL INJECTION | : | Case No. 13-cv-02002 |
| SYSTEMS, VALVE TIMING CONTROL | : | Case No. 13-cv-02202 |
| DEVICES, ELECTRONIC THROTTLE | : | Case No. 13-cv-02402 |
| BODIES, RADIATORS, and ATF | : | Case No. 13-cv-02502 |
| WARMERS | : | Case No. 13-cv-02602 |
| | : : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| | : | |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

**Auto Dealers' Memorandum in Support
of Motion for Final Approval of Settlements
With Certain Defendants and for
Certification of Settlement Classes**

Gerard V. Mantese (P34424)
**Mantese Honigman, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
gmantese@manteselaw.com

*Interim Liaison Counsel For The
Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Yifei Li
**Cuneo Gilbert & Laduca, LLP**
507 C Street, N.E.
Washington, Dc 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David Mcmullan
Brian Herrington
**Barrett Law Group, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**Larson King, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel For The
Automobile Dealer Plaintiffs*

**Statement of the Issues Presented**

1.  Whether the settlements between the Auto Dealer Plaintiffs and certain Defendants are fair, reasonable, and adequate and should be granted final approval under Fed. R. Civ. P. 23?

    **Answer:  Yes**

2.  Whether the Court should grant final certification to the Auto Dealer settlement classes it previously conditionally certified?

    **Answer:  Yes**

## Controlling or Most Appropriate Authorities

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610,
2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)........................................................7, 10, 11, 13, 15, 17, 19

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ........... 8, 10, 12, 14, 15, 17, 22, 24

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952,
2011 WL 717519 (E.D. Mich. Feb. 22, 2011)..................................................... 7, 8, 10, 11, 13, 15, 17, 19

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)............................................................ 20, 21

*In re Whirlpool Corp. Front-Loading Washer Prodcs. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ............................................................................................................17, 18, 19

*Sheick v. Auto. Component Carrier LLC*, No. 09-14429,
2010 WL 4136958 (E.D. Mich. Oct. 18, 2010).................................................... 7, 8, 9, 10, 13, 15, 17, 20

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998).......................................................17, 18, 19

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) .............................................................. 7, 8, 10

## Table of Contents

Page

Statement of the Issues Presented...........................................................................i

Introduction...........................................................................................................1

Background............................................................................................................2

    I.    The Settlements Provide Substantial Benefits to Auto Dealers ....................2

        A.    Cash Benefits .......................................................................................2

        B.    Cooperation and Other Terms ............................................................4

    II.    The Notice Plan was Carried Out and Provided Adequate
        Notice of the Settlements.........................................................................5

    III.    The Reaction of Settlement Class Members was Positive..........................6

    IV.    The Plans of Allocation of the Settlement Proceeds...................................6

Legal Standard .......................................................................................................7

Argument ...............................................................................................................9

    I.    The Settlements are Fair, Reasonable, and Adequate and Should be Given Final
        Approval ...................................................................................................9

        A.    The Likelihood of the Auto Dealers' Success on the Merits Weighed Against
            the Relief Offered in the Settlements Supports Approval...............................10

        B.    The Complexity, Expense, and Likely Duration of Continued Litigation
            Favor Final Approval ..........................................................................12

        C.    The Judgment of Experienced Counsel Who Have Evaluated the Strength of
            the Claims, Defenses, and Risks Supports Approval........................................12

        D.    Class Member Reaction.......................................................................14

        E.    The Public Interest Supports Granting Final Approval to the Settlements...15

        F.    The Settlements are not the Product of Collusion.............................15

    II.    Notice of the Settlements was Proper Under Rule 23 and Met Due Process
        Requirements.............................................................................................15

III.     Certification of Settlement Classes is Appropriate ...........................................17

         A.     The Auto Dealer Settlement Classes Satisfy Rule 23(a) ...................17

                1.     The Settlement Classes are Numerous...................................18

                2.     Common Questions of Law and Fact Exist.............................18

                3.     Auto Dealer Plaintiffs' Claims are Typical of Those of the Settlement
                       Class...........................................................................19

                4.     Auto Dealer Class Representatives and Their Counsel Have Fairly
                       and Adequately Protected the Interests of the Settlement Class
                       Members ......................................................................19

         B.     Automobile Dealer Plaintiffs' Claims Satisfy the Prerequisites of Rule
                23(b)(3) for Settlement Purposes....................................................20

                1.     Common Legal and Factual Questions Predominate .........20

                2.     Class Action Settlements Are Superior to the Other Methods of
                       Adjudication................................................................21

IV.      The Court Should Approve the Plans of Allocation and Appoint Settlement Class
         Counsel and Auto Dealer Class Representatives .........................................22

Conclusion ................................................................................................24

**Table of Authorities**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...............................................17, 20

*Beanie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007)............................................ 21

*Carlough v. Amchem Prods.*, 158 F.R.D. 314 (E.D. Pa. 1993) ................................... 16

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) ..........................................................9

*Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981
(E.D. Mich. Jul. 31, 2013).......................................................................... 13, 17, 19

*Dick v. Spring Commc'ns*, 297 F.R.D. 283 (W.D. Ky. 2014)....................................8, 12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................. 16

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*,
2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ..................................................... 18

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)........................................................... 16

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ............................................................8

*Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)........................10, 15

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610,
2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)....................7, 10, 11, 13, 15, 17, 19

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ............................. 16

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009)........................ 20

*In re Aetna, Inc.*, No. Civ. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan.4, 2001) ................................. 24

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)............................................ 18

*In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336 (E.D. Pa. 2007) ............................8

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426,
2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ....................................................... 12

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ............... 8, 10, 12, 14, 15, 17, 22, 24

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2007) ........................................ 22

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998,
2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .................................................................................... 12

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) ............................ 13

*In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534 (N.D. Ga. 1992) ............................................ 16

*In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999) ..............................................18, 19

*In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739 (E.D. Pa. 2013) ........................................................22

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ............................................ 13

*In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) .................................................. 24

*In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631 (E.D. Pa. 2003) ....................................................11

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ................................ 22

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952,
2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ..............................................................................8, 13

*In re Packaged Ice Antitrust Litig.*,
   08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ...................7, 8, 10, 11, 13, 15, 17, 19

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188
(E.D. Mich. Dec. 13, 2011) .............................................................................................................. 23

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F.Supp.2d 697 (M.D. Pa. 2008) ............................ 11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996) .................................... 16

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008) ..........................................................20, 21

*In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ................................21

*In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.*,
   137 F. Supp. 2d 1029 (S.D. Ohio 2001) ......................................................................................8, 12

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ..........................................................................................17, 18, 19

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ................................. 9, 10, 15, 17, 19

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) ........................................9, 10

*Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007 (E.D. Mich. 2005) ................................................ 8

*Marsden v. Select Medical Corp.*, 246 F.R.D. 480 (E.D. Pa. 2007) ........................................ 18

*Meijer, Inc. v. 3M*, Civ. No. 04-5871, 2006 WL 2382718 (E.D. Pa. 2006) ............................... 24

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................ 16

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006), *aff'd*, 534 F.3d 508 (6th Cir. 2008) ........................................ 8

*Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601 (E.D. Wisc. 2000) ............................... 22

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992) .................................... 16

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........................................................ 16

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976) .................................................. 20

*Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429,
2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ........................................ 7, 8, 9, 10, 13, 15, 17, 20

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ................................ 17, 18, 19

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) .................................................. 14

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) .............................................. 9

*Taifa v. Bayh*, 846 F. Supp. 723 (N.D. Ind. 1994) ........................................................... 14

*TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2d Cir. 1982) ............................... 14

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F.Supp.2d (E.D. Ky. 2010) ........................... 17

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ........................................ 7, 8, 10

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ............................................... 8, 12, 13

**Rules**

Fed. R. Civ. P. 23 ........................................................................................... 1, 9, 16

Fed. R. Civ. P. 23(a) ................................................................................... 16, 17, 20

Fed. R. Civ. P. 23(a)(1) .................................................................................... 17, 18

Fed. R. Civ. P. 23(a)(2) .................................................................................... 18, 19

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 19

Fed. R. Civ. P. 23(a)(4) .................................................................................... 19, 20

Fed. R. Civ. P. 23(b) ....................................................................................... 12, 16

Fed. R. Civ. P. 23(b)(3) ..........................................................................15, 16, 20, 21

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................... 15

Fed. R. Civ. P. 23(e)(1) ........................................................................................ 15

Fed. R. Civ. P. 23(g) ............................................................................................ 22

## Other Authorities

Manual for Complex Litigation (Fourth) § 21.311 (2004) ....................................... 16

4 Newberg on Class Actions § 18.05-15 (3d ed. 1992) ......................................... 18

## Introduction

The Automobile Dealer Plaintiffs respectfully seek final approval of ten provisionally approved settlements with certain of the Defendants in this multi-district litigation. These settlements provide nearly $59 million in cash benefits. They also provide meaningful cooperation that has already given the Auto Dealers detailed information about the anti-competitive conduct of the Defendants who continue to litigate these cases. Each of the proposed settlements is fair, reasonable, and adequate and should be granted final approval.

The settlements provide excellent benefits in light of the conduct, damage, litigation risks, and substantial cooperation provided by each of the settling Defendants. The cash components of the settlements reflect compromises that take into account the liability claims and the volume of commerce believed to be affected by the particular settling Defendant's conduct. The settlements also reflect the value provided by a Defendant's decision to settle relatively early in the litigation and provide cooperation that benefits the Auto Dealers' claims against the non-settling Defendants.

Notice of these settlements, as required by Rule 23, was provided through the notice plan previously approved by the Court. The response from the members of the settlement classes was overwhelmingly positive. There were no objections to the settlements, attorneys' fees, litigation expenses, or class representative service awards. There were no opt outs. The favorable reception of these settlements provides good evidence that the settlements should be granted final approval.

The Court should also certify, for settlement purposes, the settlement classes that it previously conditionally certified in its preliminary approval orders. The settlements meet the Rule 23 requirements for settlement classes and should be granted certification. In doing so, the Court should confirm the appointment of settlement counsel and the class representatives for the Auto Dealers. Finally, the Auto Dealers respectfully request that the Court approve the plans of

allocations currently available for the Wire Harness Systems, Occupant Safety Systems, Inverters, and Starters settlements.

**Background**

**I.      The Settlements Provide Substantial Benefits to Auto Dealers.**

**A.      Cash Benefits.**

In a prior series of orders, the Court preliminarily approved settlements (the "Settlements") between the Auto Dealers and a number of the Defendants and their affiliates (the "settling Defendants"). Those Settlements are now before the Court for final approval. The settling Defendants are: Nippon Seiki Company Ltd., N.S. International, Ltd., and New Sabina Industries, Inc. (collectively, "Nippon Seiki"); Lear Corporation ("Lear"); Kyungshin-Lear Sales and Engineering, LLC ("KL Sales"); Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Safety Technology, Inc., and Autoliv Japan Ltd (collectively, "Autoliv"); TRW Deutschland Holding GmbH and ZF TRW Automotive Holdings Corp. (f/k/a TRW Automotive Holdings Corp.) (collectively, "TRW"); Yazaki Corporation and Yazaki North America, Inc. (collectively, "Yazaki"); Panasonic Corporation and Panasonic Corporation of North America (collectively, "Panasonic"); Hitachi Automotive Systems, Ltd. ("HIAMS"); T. RAD Co., Ltd. and T.RAD North America, Inc. (collectively, "T.RAD"); and Fujikura Ltd. and Fujikura Automotive America LLC (collectively, "Fujikura").

The Settlements involve 18 of the component parts that the Auto Dealers contend were the subject of coordination, bid-rigging, and price-fixing. For the Settlements currently before the Court, the settling Defendants, and settlement amounts are:

| Automotive Parts Case | Settling Defendant | Settlement Amount |
|---|---|---|
| Air Flow Meters | HIAMS | $1,282,662 |
| Alternators | HIAMS | $1,992,078 |
| ATF Warmers | T.RAD | $234,000 |
| Wire Harness Systems | Lear | $960,000 |
| | KL Sales | $72,000 |
| | Fujikura | $2,256,000 |
| | Yazaki | $23,136,990 |
| Electronic Throttle Bodies | HIAMS | $2,197,750 |
| Fuel Injection Systems | HIAMS | $2,774,359 |
| Fuel Senders | Yazaki | $18,510 |
| HID Ballasts | Panasonic | $1,740,188.21 |
| Ignition Coils | HIAMS | $2,375,839 |
| Instrument Panel Clusters | Nippon Seiki | $1,440,000 |
| | Yazaki | $844,500 |
| Inverters | HIAMS | $738,000 |
| Motor Generators | HIAMS | $738,000 |
| Occupant Safety Systems | TRW | $1,719,900 |
| | Autoliv | $6,000,000 |
| Radiators | T.RAD | $2,106,000 |
| Starters | HIAMS | $1,239,319 |
| Steering Angle Sensors | Panasonic | $1,987,335.47 |
| Switches | Panasonic | $1,672,476.32 |
| Valve Timing Control Devices | HIAMS | $1,421,993 |

3

(*See* Orders approving settlements between Auto Dealers and Nippon Seiki [Case No. 12-cv-00202, ECF No. 79] (Feb. 18, 2014); Lear [Case No. 12-cv-00102, ECF No. 178] (July 8, 2014); KL Sales [Case No. Case No. 12-cv-00102, ECF No. 178] (July 8, 2014); Autoliv [Case No. 12-cv-00602, ECF No. 73]; Yazaki [Case No. 12-cv-00102, ECF No. 212; Case No. 12-cv-00202, ECF No. 112; and Case No. 12-cv-00302, ECF No. 127] (Oct. 10, 2014); TRW [Case No. 12-cv-00602, ECF No. 80] (Oct. 10, 2014); Panasonic [Case No. 13-cv-01302, Case No. 13-cv-01602, Case No. 13-cv-01702; ECF No. 116] (April 10, 2015); HIAMS [Case No. 13-cv-002002, Case No. 13-cv-00702, Case No. 13-cv-01102, Case No. 13-cv-01402, Case No. 13-cv-01502, Case No. 13-cv-01802, Case No. 13-cv-02002, Case No. 13-cv-02202, Case No. 13-cv-02502, Case No. 13-cv-02602; ECF No. 21] (April 19, 2015); T.RAD [Case No. 13-cv-01002, Case No. 13-cv-02402; ECF No. 83] (August 27, 2015); and Fujikura [Case No. 12-cv-00102; ECF No. 369] (September 23, 2015)).

Because of the different parts involved, there are 23 different settlement classes in the Settlements (the "Settlement Classes). (*Id.*) The Auto Dealers negotiated the Settlements in tandem with the End Payors to allow the settling Defendants to resolve the indirect purchaser claims in the litigation. (*See* Declaration of Shawn M. Raiter). As part of these negotiations, the Auto Dealers considered the particular Defendants' conduct, the estimated amount of commerce affected by that conduct, and the value of the other settlement terms like cooperation being offered by the settling Defendant. (*Id.*) The Settlements provide approximately $59 million in gross settlement funds for the Auto Dealers. In the opinion of counsel for the Auto Dealers, the Settlements provide an excellent result for the Settlement Classes and are fair, reasonable, and adequate. (Raiter Decl.)

### B.    Cooperation and Other Terms.

In addition to the cash payments, the settling Defendants are required to provide the Auto Dealers with various forms of cooperation that include: (1) the production of certain documents and data relevant to the ongoing claims against the non-settling Defendants; (2) interviews with

representatives of the settling Defendants; (3) the assistance in understanding certain data and other information produced to Auto Dealers; and (4) facilitating the use of such data and information at trial. Those terms were set out in detail in the preliminary approval motions and the agreements between the parties (the "Settlement Agreements).

## II.     The Notice Plan was Carried Out and Provided Adequate Notice of the Settlements.

The Settlements provide cash benefits to automobile dealerships that purchased certain parts and/or new vehicles containing those parts in jurisdictions that the Auto Dealers contend allow antitrust indirect purchasers to seek money damages: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "Included States").

Through a class action notice consultant, approximately 16,000 potential automobile dealer class members in the Included States were identified and sent notice through the mail. (*See* Declaration of Kenneth Jue.) The notice consultant also sent approximately 124,000 emails to addresses associated with automobile dealerships that purchased new vehicles and parts in the Included States. (*Id.*) A multi-faceted notice program intended to provide the best notice practicable under the circumstances was therefore carried out and included:

- Direct mail notice to approximately 16,000 postal addresses of automobile dealerships potentially eligible for money benefits under the Settlements;

- Email notice to approximately 124,000 email addresses associated with automobile dealerships potentially eligible for money benefits under the Settlements;

- Published notice in magazines like *Ward's AutoWorld*, *Automotive News*, and *Auto Dealer Monthly* and digital media designed to target new car automobile dealerships nationwide;

- Online media efforts through outlets like Facebook and Twitter; and

- Earned media efforts through a national press release and the settlement web site, www.AutoDealerSettlement.com

(*See* Jue Decl.)  The notice plan "reached" more than 95 per cent of the potentially eligible automobile dealers in the Included States.  (*Id.*)

## III.    The Reaction of Settlement Class Members was Positive.

The reaction of automobile dealers to these Settlements was positive.  There were no objections to any of the 23 different Settlement Classes.  (*See* Jue Decl.)  No class member objected to the terms of the settlements, the notice plan, the requested attorneys' fees, cost reimbursement, or service awards.  (*Id.*)  No class member requested an opportunity to be heard at the final fairness hearing.  (*Id.*)  Of the approximately 16,000 recipients of the direct mail notice, only one dealership group initially elected to opt out but later withdrew that request and elected to participate in the Settlements.  (*Id.*; Raiter Decl., Ex. E).

## IV.    The Plans of Allocation of the Settlement Proceeds.

The special allocation consultant approved by the Court, Stuart Rosenthal, has developed plans for distributing the net settlement proceeds to members of the Settlement Classes who submit claim forms for new vehicles and affected component parts purchased in the Included States ("Plans of Allocation").  Using information available about the parts and brands and models targeted by anti-competitive conduct, Rosenthal devised a point-based system that provides greater weight to the purchase of models and brands for which there is evidence that efforts were made to coordinate bids for component parts used in those vehicles.  (*See* Raiter Decl. Ex. A, B, C, and D.)

As an example, the Plan of Allocation for the Wire Harness settlements will allocate the net proceeds of each of the Wire Harness Settlements to:

(1) Dealers who purchased vehicle models that were subject to alleged coordinated activity on bids for component parts;

(2) Dealers who purchased subsequent vehicle models that were subject to alleged coordinated activity on bids for component parts;

(3) Dealers who purchased vehicles whose manufacturers experienced multiple instances of alleged coordinated activity on bids for component parts;

(4) Dealers who purchased other vehicles;

(5) Dealers who purchased component parts subject to allegedly coordinated activity; and

(6) A reserve fund for future allocation and distribution to eligible Settlement Class members.

(Ex. A.)   Similar Plans of Allocation have been developed for the Auto Dealer settlements in Occupant Safety Systems, Inverters, and Starters.  (*See* Ex. B, C, and D.)

The Plans of Allocation also provide an assignment of value to the purchase of the affected parts for use as replacement parts.  (Ex. A, B, C, and D.)  Reserve funds for future allocation and distribution were implemented to address the possibility that information not currently available about affected parts, models, and brands would become available in the future.  (*Id.*)  If that does not occur, the reserve funds will be distributed on a *pro rata* basis to the members of the Settlement Classes in their respective cases.  (*Id.*)  As the Auto Dealers previously advised the Court, eligible dealerships that submit a claim form will receive a minimum payment of $350 under the Plans of Allocation.  (*Id.*)

## Legal Standard

The Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits."  *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions).

7

To be given final approval, a class action settlement must be "fair, reasonable, and adequate." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also Packaged Ice*, 2011 WL 717519, at *8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

The court considers whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich*, 720 F.2d at 921-23). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick,* 2010 WL 4136958, at *14-15.

The court has broad discretion when approving a class action settlement. *UAW*, 497 F.3d at 636; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts give considerable weight and deference to the view of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation"). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the*

8

*Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted); *see also   In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003).

Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), or "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981). Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick*, 2010 WL 4136958, at *15 (citation omitted). The court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

## Argument

## I.    The Settlements are Fair, Reasonable, and Adequate and Should be Given Final Approval.

The Auto Dealer settlements before the Court meet the criteria required for final approval under Rule 23 of the Federal Rules of Civil Procedure. They provide meaningful benefits and were reached after negotiations between experienced counsel who were armed with sufficient background about the merits and defenses to the claims asserted. The settlements reflect a reasonable compromise in light of the liability, damages, and procedural uncertainties facing both the Auto Dealers and the settling Defendants.

Courts in the Sixth Circuit consider a number of factors when determining whether a settlement should be granted final approval: (1) the likelihood of success on the merits weighed

against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8; *see also UAW*, 497 F.3d at 631; *Griffin*, 2013 WL 6511860, at *3; *Cardizem*, 218 F.R.D. 508 at 522.  No single factor is determinative and the court may weigh each factor based on the circumstances of the case.  *Int'l Union,* 2006 WL 1984363, at *21.  The court may "choose to consider only those factors that are relevant to the settlement at hand." *Id.* at *22; s*ee also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992) (holding that a district court enjoys wide discretion in assessing the weight and applicability of factors).

### A.   The Likelihood of the Auto Dealers' Success on the Merits Weighed Against the Relief Offered in the Settlements Supports Approval.

The court assesses class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'"  *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594); *Int'l Union,* 2006 WL 1984363, at *21.  The fairness of such a settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631.  When considering the likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued.  *Sheick*, 2010 WL 4136958, at *16 (citing *IUE-CWA*, 238 F.R.D. at 595).

The Auto Dealers believe they will prevail in these cases. But they also recognize that success is not guaranteed in any complex litigation.  Although there were illegal conspiracies to coordinate bidding and other activities on component parts, the settling and non-settling Defendants have vigorously defended these cases.  Some Defendants have claimed that the Auto Dealers cannot

prove that the bid rigging caused them an antitrust injury.  Other Defendants have previewed arguments about class certification, which they contend should not be granted in the Auto Dealer cases.  The Settlements reflect both the strengths of the Auto Dealers claims and the risk that the settling Defendants may prevail on some of their arguments.

The settling Defendants are represented by experienced and competent counsel and were prepared to defend these cases through trial.  While there is risk in any litigation, class actions are inherently high-stakes and high-risk.  Auto Dealers remain optimistic about the outcome of these cases, but must acknowledge that the settling Defendants could prevail on certain legal or factual arguments and by doing so, could reduce or eliminate potential recoveries for the Auto Dealers. The certainty and substantial benefits provided by the Settlements support a finding that they were reasonable and adequate.

These are also the first settlements negotiated by the Auto Dealers.  This gives the Settlements some "ice-breaker" value.  *Packaged Ice*, 2011 WL 717519, at *10; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003).  The cooperation that the settling Defendants have agreed to provide is a "substantial benefit" to the class and "strongly militates toward approval" of the settlements.  *Linerboard*, 292 F. Supp.2d at 643.  This cooperation will enhance and strengthen the Auto Dealers' prosecution of claims against the Defendants who continue to litigate these cases. *Linerboard*, 292 F. Supp. 2d at 643; *Packaged Ice*, 2011 WL 717519, at *10 (noting that cooperation by the settlement defendant "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants."); *In re Pressure Sensitivie Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("the benefit of obtaining the cooperation of the Settling Defendants tend to offset the fact that they would be able to withstand a larger judgment.").

Interim Co-Lead Class Counsel for the Auto Dealers believe that the Settlements represent an excellent recovery for Auto Dealers.  Weighing the benefits of the Settlements against the risks of

continued litigation tilts the scale heavily toward final approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

**B.    The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval.**

"Settlement should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Vukovich*, 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics*, 137 F. Supp. at 1013 (settlement avoid the costs, delays, and multitude of other problems associated with class actions, which are "inherently complex."); *Cardizem*, 218 F.R.D. at 533 ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex . . . .").

The Auto Dealers continue to litigate with the Defendants who have not yet settled making it impossible for Auto Dealers to spell out with specificity their analysis of the risks of litigating versus settling. The Court, however, has had substantial opportunity to consider the claims and defenses in this litigation and knows that complex antitrust litigation of this scope has many inherent risks that settlements extinguish. The fact that the Auto Dealers achieved substantial recoveries, which eliminate risk while ensuring substantial payments, supports final approval of the Settlements.

**C.    The Judgment of Experienced Counsel Who Have Evaluated the Strength of the Claims, Defenses, and Risks Supports Approval.**

The Settlements were reached by experienced counsel after arm's-length negotiations and are therefore provided deference. *Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate . . . .") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,

No. 3:08-MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007).

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18). "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922-23).

Interim Co-Lead Counsel for the Auto Dealers are experienced in handling class action antitrust and other complex litigation. They have represented the interests of Auto Dealers from the inception of this litigation and negotiated the Settlements at arm's length with well-respected and experienced counsel for the settling Defendants. Interim Co-Lead Counsel believe that the Settlements each provide an excellent result in light of the circumstances of each settling Defendant's conduct and potential liability. (Raiter Decl.)

Discovery in the cases involved in the Settlements varied, but in each case counsel for the Auto Dealers was armed with important information about the conspiracies through review of documents produced to the Department of Justice, proffers of information by cooperating Defendants, and/or discovery from this litigation. The amount of discovery completed is a factor to be considered in the settlement approval process, but there is no baseline required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6. The "question is whether the parties had adequate

information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)).

The discovery and available information allowed Interim Co-Lead Counsel for the Auto Dealers to evaluate the strengths and weaknesses of the claims and defenses and to evaluate the benefits of the Settlements.   Interim Co-Lead Counsel for the Auto Dealers believe that the Settlements are fair, reasonable, and in the best interests of Auto Dealers who purchased new automobiles containing the parts at issue in the Settlements.  (Raiter Decl.)  The opinion of counsel supports final approval of the Settlements.

      **D.**    **Class Member Reaction.**

There were no objections to any of the settlements.  This is remarkable because there are often at least a few objections to class settlements.  "A certain number of opt-outs and objections are to be expected in a class action.  If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement." *Cardizem*, 218 F.R.D. at 527.  This reaction from the members of the settlement classes strongly supports the adequacy of the settlements. *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *see also TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class).

Notice of these settlements was sent by direct mail to nearly 16,000 addresses and 124,000 email addresses connected to new car dealerships in the Included States.  (Jue Decl.)  Initially, a single dealership group elected to opt out of the Settlements.  (*Id.*)  However, upon a careful analysis of the Settlements, that dealership group withdrew its request and instead elected to participate in

the Settlements. (*Id.*; Ex. E)  The lack of a single opt-out speaks loudly about the adequacy of the Settlements.

### E.     The Public Interest Supports Granting Final Approval to the Settlements.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205); *see also Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12.  In light of the conduct at issue and guilty pleas related to the claims here, there is no countervailing public interest that provides a reason to disapprove the Settlements.  *Griffin*, 2013 WL 6511860, at *5.  This factor also supports final approval.

### F.     The Settlements are not the Product of Collusion.

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence.  *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Int'l Union,*, 2006 WL 1984363, at *26; *Sheick*, 2010 WL 4136958, at *19-20.  The Settlements here were reached after adversarial litigation and often contentious discovery.  The negotiations leading to the Settlements were entirely arms' length and often took many months of settlement proposal exchanges.  The Settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients.

## II.    Notice of the Settlements was Proper Under Rule 23 and Met Due Process Requirements.

Fed. R. Civ. P. 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The purpose of notice in a class action is to "afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.311, at 288 (2004) ("MANUAL."). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). Each class member need not receive actual notice for the due-process standard to be met, "so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

Where names and addresses of known or potential class members are reasonably available, direct-mail notice should be provided. *See, e.g., Eisen*, 417 U.S. at 175-76; MANUAL, § 21.311, at 292. If the names and addresses of class members cannot be determined by reasonable efforts, notice by

publication is sufficient to satisfy the requirements of the due-process clause and Rule 23. *Mullane*, 339 U.S. at 317-18; *Carlough v. Amchem Prods.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993).

No member of the Settlement Class objected to or criticized the notice program. (Jue Decl.) The program was primarily a direct mail program that targeted class members and was supplemented by published notice in industry-specific publications. The notice program easily satisfied the requirements of Rule 23 and due process. *Packaged Ice*, 2011 WL 717519, at *5; *Sheick*, 2010 WL 4136958 at *15.

## III.   Certification of Settlement Classes is Appropriate.

In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the Settlements. It is well-established that a class may be certified for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Int'l Union*,, 2006 WL 1984363, at *3, *18; *Cardizem*, 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009). The Settlements meet the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and 23(b)(3) for settlement purposes.

### A.   The Auto Dealer Settlement Classes Satisfy Rule 23(a).

Certification of a class requires meeting the requirements of Fed.R.Civ.P. 23(a) and one subsection of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Int'l Union*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly

17

and adequately protect the interest of the class.  *Griffin*, 2013 WL 6511860, at *5; *Date*, 2013 WL 3945981, at *3.

### 1.    The Settlement Classes are Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test to satisfy the numerosity requirement, and the most important factor is whether joinder of all the parties would be impracticable.  *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity).  Numerosity is determined by the number and geographic location of class members.  *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

The notice for these Settlements was mailed to approximately 16,000 automobile dealership entities, geographically dispersed throughout the United States.  Joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.    Common Questions of Law and Fact Exist.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397.  *Accord Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at *3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996)).

"[A]llegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999) (citing 4 Newberg on Class Actions §

18.05-15 (3d ed. 1992)). Whether the settling Defendants entered into illegal agreements to rig bids and artificially fix prices of automobile component parts presents questions common to all members of the Settlement Classes. *Packaged Ice*, 2011 WL 717519, at *6 (holding that the commonality was satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484.

Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met for the Settlement Classes.

### 3. Auto Dealer Plaintiffs' Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Int'l Union*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3. "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399).

The claims of the named plaintiff Auto Dealers arise from the same course of conduct as the claims of the members of the Settlement Classes. Rule 23(a)(3)'s typicality requirement is satisfied for the Settlement Classes.

### 4. Auto Dealer Class Representatives and Their Counsel Have Fairly and Adequately Represented the Interests of the Class Members.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests

of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick*, 2010 WL 3070130, at *3 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)). These requirements are met here.

The interests of the Auto Dealer representatives are the same as those of other Settlement Class members. These Plaintiffs are indirect purchasers of the parts and new vehicles at issue in this litigation and they, like the other Settlement Class members, claim that they were injured as a result of the alleged conspiracies and seek to prove that the settling Defendants violated antitrust and consumer laws. The named Auto Dealer Plaintiffs have the same interests as those of the members of the Settlement Classes. The Auto Dealer Plaintiffs have retained qualified and experienced counsel to pursue these cases. Counsel for the Auto Dealers have vigorously pursued this litigation and will continue to represent the interests of Auto Dealers. Adequate representation under Rule 23(a)(4) is therefore satisfied.

### B. Automobile Dealer Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.

In addition to satisfying Rule 23(a), plaintiffs must show that the class falls under at least one of the three subsections of Rule 23(b). The Settlement Classes qualify under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### 1.    Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) requirement that common issues predominate insures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beanie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy presents a common, predominating question. *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at *6; *In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747, at *5, 9-11 (ED. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal*, the Sixth Circuit observed that the "district court found that the 'allegations of price-fixing and market allocation . . . will not vary among class members' . . . Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

Here, the same set of core operative facts and theory of liability apply in each of the Settlements.  Whether the settling Defendants entered into illegal agreements presents questions common to all Settlement Class.  *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6.  If Automobile Dealer Plaintiffs and the other Settlement Class members brought individual actions, they would each be required to prove the same claims in order to establish liability.  For settlement purposes, common issues predominate.

### 2.    Class Action Settlements Are Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of

other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

The Auto Parts litigation has been centralized in this Court and no member of a Settlement Class requested exclusion from the Settlements. Thus, consideration of factors (1) - (3) demonstrates the superiority of these Settlement Classes. The fourth Rule 23(b)(3) factor  is not relevant in a settlement-only class because the potential difficulties in managing a trial of the case is extinguished by the settlement. *Cardizem*, 218 F.R.D. at 517.

In addition, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (ED. Wisc. 2000)). Certifying the Settlement Classes will conserve judicial and private resources and will provide a single outcome that is binding on all Settlement Class members. *Cardizem*, 200 F.R.D. at 351. The alternatives to these Settlements are class action are a multiplicity of separate lawsuits or no recourse for or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996). The certification of Settlement Classes is superior to the alternatives in this litigation.

## IV.    The Court Should Approve the Plans of Allocation and Appoint Settlement Class Counsel and Auto Dealer Class Representatives.

At preliminary approval, the Court provisionally appointed Interim Co-Lead Counsel for the Auto Dealers as class settlement counsel and appointed the named Auto Dealer representatives in those cases as the representatives of the provisionally certified class settlements. As part of the final approval process, the Court should appoint Cuneo Gilbert & LaDuca, LLP, Barrett Law Group, P.A., and Larson · King, LLP as Settlement Class Counsel. These firms have represented the Auto

Dealers throughout the litigation and satisfy the requirements of Rule 23(g).  The Court should also appoint the Automobile Dealer Plaintiffs named in the operative complaints in the Settlements as class representatives of their respective Settlement Classes.

The Auto Dealers also request that the Court approve the Plans of Allocation devised by the Auto Dealers' special allocation consultant.  The Plans of Allocation distribute the net settlement proceeds to members of the Settlement Classes who submit claim forms for new vehicles and affected component parts purchased in the Included States.  They use information available about the parts and brands and models targeted by anti-competitive conduct and apply a point-based system that provides greater weight to the purchase of models and brands for which there is evidence that efforts were made to coordinate bids for component parts used in those vehicles.  (*See* Raiter Decl. Ex. A, B, C, and D).

Plans of Allocation have been completed for the Auto Dealer settlements involving Wire Harness Systems, Occupant Safety Systems, Inverters, and Starters.  (*See* Ex. B, C, and D).  The Plans of Allocation also provide an allocation to the purchase of the affected parts for use as replacement parts.  (Ex. A-D).  Reserve funds for future allocation and distribution were implemented to address the possibility that information not currently available about affected parts, models, and brands would become available in the future.  (*Id.*)  If that does not occur, the reserve funds will be distributed on a *pro rata* basis to the members of the Settlement Classes in their respective cases.  (*Id.*)  Eligible dealerships that submit a claim form will receive a minimum payment of $350 under the Plans of Allocation.  (*Id.*)

The Plans of Allocation provide a fair and reasonable method for distributing the settlement funds, provide eligible members of the Settlement Classes with information about how the calculations will be made, and should be approved by the Court.  *Cardizem,* 218 F.R.D. at 531. "'Approval of a plan of allocation of a settlement fund in a class action is governed by the same

standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate."' *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *15-16 (E.D. Mich. Dec. 13, 2011) (quoting *Meijer, Inc. v. 3M*, Civ. No. 04-5871, 2006 WL 2382718, at*17 (E.D. Pa. 2006)); *In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166, 184(E.D. Pa. 2000)). "'Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."' *Id.* (quoting *In re Aetna, Inc.*, No. Civ. A. MDL 1219, 2001 WL 20928, at *12 (E.D. Pa. Jan.4, 2001)); *Cardizem*, 218 F.R.D. at 531 (approving a plan as fair and reasonable that adopted a *pro rata* method for calculating each class member's share of the settlement fund).

The approach used by the Plans of Allocation provides reimbursement to the eligible members of the Settlement Classes based on the relative extent of injury the Auto Dealers believe they sustained. The Plans assign weighted point scores based on the volume of purchases of affected vehicles and parts. Vehicles and parts for which there is evidence of coordinated bid and pricing activity receive more weight. This approach provides a fair and reasonable method for allocating more money to those automobile dealers who sold more of the affected parts and vehicles. The Plans and claim process are also designed to minimize the burden on dealers in making a claim.

The Court should approve the Plans of Allocation for the Auto Dealer settlements involving Wire Harness Systems, Occupant Safety Systems, Inverters, and Starters. As future Plans are completed, the Auto Dealers will provide them to the Court for consideration and approval.

**Conclusion**

For the foregoing reasons, Automobile Dealer Plaintiffs respectfully request that the Court grant final approval of the Settlements and certify the Settlement Classes for purposes of settlement.

Dated:  November 16, 2015

By: /s/Gerard V. Mantese
Gerard V. Mantese (P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
Facsimile: (248) 457-9201
gmantese@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Yifei Li
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
Joel@cuneolaw.com
Vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A**.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

25

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

## CERTIFICATE OF SERVICE

I, Gerard V. Mantese, hereby certify that I caused a true and correct copy of **AUTO DEALERS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH CERTAIN DEFENDANTS AND FOR CERTIFICATION OF SETTLEMENT CLASSES** to be served via e-mail upon all registered counsel of record via the Court's CM/ECF system on November 16, 2015.


/s/Gerard V. Mantese
Gerard V. Mantese

26